**Dale VAN ES, d/b/a Van Es Dairy, Appellant,**

v.

**Danny and Pam FRAZIER, Appellees.**

No. 10–06–00125–CV.

Court of Appeals of Texas, Waco.

July 5, 2007.

Rehearing Overruled Aug. 21, 2007.

Randall D. Terrell, Starbird & Terrell LLP, Eric J. Taube and Sarah E. Starnes, Hohmann Taube & Summers LLP, Austin, for appellant.

D. Scott Cain, Bradley & Cain LLC, Cleburne, for Appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Danny and Pam Frazier filed suit against Dale Van Es dba Van Es Dairy seeking injunctive relief and alleging claims of nuisance, trespass, and negligence. The trial court denied Van Es's motion for transfer of venue and later granted the Fraziers' motion for "death penalty" sanctions. The court granted the Fraziers' summary judgment motion and, after a trial on the issue of exemplary damages, signed a final judgment. Van Es contends in four issues that: (1) the court abused its discretion by imposing death penalty sanctions; (2) the court's award of attorney's fees is erroneous because the Fraziers did not request attorney's fees in their summary judgment motion, there is no contractual or statutory basis for the award, and there is no evidence to support the award; (3) there is no evidence to support the award of exemplary damages; and (4) the court abused its discretion by refusing to grant his second request to transfer venue. We will affirm in part and reverse and remand in part.

## Background

The Fraziers sued Van Es and Parker Water Supply Company after the water supply line to their home ruptured and was allegedly "contaminated with bovine manure and urine" from Van Es's dairy. The Fraziers alleged that Parker acted with gross negligence in causing the water supply line to rupture and that the rupture caused a diminution in the value of their property. They alleged that bovine waste and odors emanating from Van Es's property constituted a nuisance, that Van Es was spreading the bovine waste and urine in a manner which "encroached" on the Frazier's property, and that Van Es made affirmative misrepresentations to obtain a permit from the Texas Natural Resources Conservation Commission authorizing the expansion of his dairy operations. Thus, the Fraziers sought: (1) injunctive relief prohibiting Van Es from continuing to operate the dairy without a proper permit or to spread bovine waste in a manner that encroached on the Fraziers' property; (2) damages from Parker; and (3) declaratory relief, including attorney's fees.

Van Es filed a motion to sever the Fraziers' claims against him from their claims against Parker and transfer venue of the claims against him to Hill County. Van Es alleged that venue was mandatory in Hill County because that is the county of his residence and the Fraziers sought injunctive relief and because the real property which is the subject of the dispute is located in Hill County. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.011 (Vernon 2002), § 65.023 (Vernon 1997).

The court denied Van Es's motion to transfer venue in January 2004. Van Es filed a mandamus proceeding in this Court

one year later seeking review of the venue ruling. After receiving the Fraziers' response, this Court summarily denied the mandamus petition. *See In re Van Es*, No. 10–05–012–CV, 2005 WL 762648 (Tex. App.-Waco Mar.30, 2005, orig. proceeding) (mem.op.).

In May and August of 2005, the trial court granted motions for sanctions against Van Es arising from discovery disputes. The August sanctions order required Van Es: (1) to produce documents responsive to the Fraziers' discovery requests on or before September 12; (2) appear with his wife for depositions on September 21; and (3) pay $3,000 in monetary sanctions on or before September 12. The sanctions order further provided that Van Es's pleadings would be struck and he would not be permitted to conduct discovery or proffer evidence at trial or any hearing unless he complied with each portion of the sanctions order on or before September 26.

Van Es filed a second mandamus proceeding in this Court in November 2005 seeking review of the August sanctions order.[1] This Court summarily denied Van Es's second mandamus petition one month later. *See In re Van Es*, No. 10–05–338–CV, 2005 WL 3338926 (Tex.App.-Waco Dec.7, 2005, orig. proceeding) (mem.op.).

The Fraziers filed a supplemental petition seeking actual damages for nuisance and trespass and seeking exemplary damages based on allegations that Van Es acted with malice and with gross negligence. In an amended answer, Van Es "renew[ed]" his motion to sever and transfer venue, presenting the same arguments as before. In addition, Van Es argued that venue for the Fraziers' nuisance and trespass claims is mandatory in Hill County under section 15.011 of the Civil Prac-

tice and Remedies Code because that is the situs of the real property which the Fraziers allege to have been damaged by his conduct. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011.

The Fraziers settled with Parker and filed a motion to dismiss their claims against Parker, which the court granted. They filed a motion for partial summary judgment regarding their claims against Van Es. They alleged in the summary judgment motion that there were no genuine issues of material fact regarding their claims that Van Es's actions constitute a trespass on their property and a nuisance, that Van Es acted with negligence, and that they suffered damages because of his actions. The Fraziers did not request attorney's fees or offer any summary judgment evidence to support an award of attorney's fees.

The trial court signed its final sanctions order in February 2006, striking Van Es's pleadings and prohibiting him from proffering evidence at trial or any hearing.

One month later, the court granted the Fraziers' motion for partial summary judgment. The summary judgment order: (1) struck Van Es's summary judgment response; (2) awarded the Fraziers actual damages of $581,793 and attorney's fees of $121,171; and (3) declared that Van Es's application for a dairy permit from TNRCC was void.

The court held a "final hearing" one month after granting the partial summary judgment. Van Es did not appear for this hearing. At the Fraziers' request, the court took judicial notice of the summary judgment evidence and of the testimony they offered at the hearing on their request for a temporary injunction. After

---

1. Van Es actually initiated this mandamus proceeding in September by filing a motion for an extension of time to file his mandamus petition. He did not file the petition until November.

hearing argument by the Fraziers' counsel, the court found that Van Es had acted with gross negligence and awarded exemplary damages of $250,000. The court's final judgment reiterates the attorney's fee award set forth in the partial summary judgment.

### Venue

■ Van Es contends in his fourth issue that the court abused its discretion by refusing to grant his second request to transfer venue. According to Van Es, venue was mandatory in Hill County under section 15.011 of the Civil Practice and Remedies Code because the Fraziers sought recovery of damages to real property. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.011.

The Fraziers expressly sought to recover damages to real property in their first amended petition, which was filed several months before the court decided Van Es's first motion to transfer venue. Van Es asserted section 15.011 as one of the grounds for transfer in his first motion to transfer venue (as amended).

Rule of Civil Procedure 87(5) provides in pertinent part:

> If venue has been sustained as against a motion to transfer, or if an action has been transferred to a proper county in response to a motion to transfer, then no further motions to transfer shall be considered regardless of whether the movant was a party to the prior proceedings or was added as a party subsequent to the venue proceedings, unless the motion to transfer is based on the grounds that an impartial trial cannot be had under Rules 257–259 or on the ground of mandatory venue, provided that such claim was not available to the other movant or movants.

TEX.R. CIV. P. 87(5).

"Thus the general rule is that only one venue determination may be made in a single proceeding in the same trial court." 2 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 6:48 (2d ed. Supp.2007); *see also Fincher v. Wright*, 141 S.W.3d 255, 263–64 (Tex.App.-Fort Worth 2004, no pet.) (once trial court makes venue determination, Rule 87(5) prohibits subsequent venue determination, even in subsequent lawsuit involving same parties and claims); *In re Shell Oil Co.*, 128 S.W.3d 694, 696 (Tex.App.-Beaumont 2004, orig. proceeding) (once trial court made venue determination, Rule 87(5) prohibited subsequent venue determination, even after plaintiffs non-suited their case and later refiled in another county); *Marathon Corp. v. Pitzner*, 55 S.W.3d 114, 137 n. 6 (Tex.App.-Corpus Christi 2001) (under rule 87(5), trial court's decision to reconsider venue determination was improper), *rev'd on other grounds*, 106 S.W.3d 724 (Tex.2003) (per curiam).

Under Rule 87(5), a subsequent motion to transfer venue asserting a claim of mandatory venue is not permitted unless that claim "was not available" to the original movant. *See* TEX.R. CIV. P. 87(5).

Here, the Fraziers sought recovery for damages to real property in their first amended petition and Van Es alleged in his amended motion to transfer venue that mandatory venue lay in Hill County under section 15.011 because of the Fraziers' request for such damages. The trial court denied this motion. Thus, it would have been improper for the court to make a subsequent venue determination with section 15.011 as the basis for transfer of venue. *Id.; see also Fincher*, 141 S.W.3d at 263–64; *Shell Oil Co.*, 128 S.W.3d at 696; *Marathon Corp.*, 55 S.W.3d at 137 n. 6; MCDONALD & CARLSON § 6:48. Accordingly, we overrule Van Es's fourth issue.

### Death Penalty Sanctions

■ Van Es contends in his first issue that the court abused its discretion by

imposing death penalty sanctions for discovery violations. The Fraziers respond that Van Es has not preserved this complaint because he did not file a post-trial motion challenging the imposition of sanctions.

We disagree with the Fraziers' assertion. Rule of Appellate Procedure 33.1(a)(1)(A) states in pertinent part that, to preserve a complaint for appellate review, the appellant must have presented "a timely request, objection, or motion that ... stated the grounds for the ruling that the complaining party sought." TEX.R.APP. P. 33.1(a)(1)(A).

Van Es presented his grounds for opposition to the Fraziers' requests for sanctions in written responses and/or in arguments presented in the hearings on the Fraziers' requests. Thus, Van Es adequately preserved these issues for appellate review. *Cf. Chubb Lloyds Ins. Co. v. Kizer,* 943 S.W.2d 946, 953 (Tex.App.-Fort Worth 1997, writ denied) ("A point not raised by pleadings, by a motion for new trial, or otherwise presented to the trial court may not be raised on appeal.").

Van Es presents numerous challenges to the imposition of sanctions, which may be generally grouped within the following sub-issues:

(1) whether the court abused its discretion by imposing sanctions without conducting an evidentiary hearing;

(2) whether the sanctions can stand without an evidentiary record to support them; and

(3) whether the court gave sufficient consideration to the imposition of lesser sanctions.

We address each of these sub-issues in turn.

### (1) Evidentiary Hearing

■ Van Es cites this Court's decision in *Minns v. Piotrowski* for the proposition "that a trial court is required to hold an identifiable evidentiary hearing before imposing [a death penalty] sanction." 904 S.W.2d 161, 169 (Tex.App.-Waco 1995), *writ denied,* 917 S.W.2d 796 (Tex.1996) (per curiam). He contends that the court did not conduct such a hearing.

However, the Supreme Court has more recently concluded that an "oral hearing" is not required before imposition of discovery sanctions.

> Although either party may request an oral hearing, Cummings did not do so, and there is no "oral hearing" requirement in the rules. Rule 215.3, which authorizes a trial court to impose sanctions, does require "notice and hearing" before sanctions are imposed. However, nothing in the rule indicates that this must be an "oral hearing." A "hearing" does not necessarily contemplate a personal appearance before the court or an oral presentation to the court.

*Cire v. Cummings,* 134 S.W.3d 835, 843–44 (Tex.2004) (footnote and citations omitted).

While *Cire* is a decision which primarily addresses the imposition of death penalty sanctions, the particular issue of whether an "oral hearing" is required was raised with reference to the imposition of a monetary sanction by the trial court in an order granting a motion to compel which predated the trial court's imposition of death penalty sanctions. *See id.* at 837–38, 843. Nevertheless, the rationale of *Cire* has been extended to determinations of whether to impose death penalty sanctions. *See Tidrow v. Roth,* 189 S.W.3d 408, 413 (Tex. App.-Dallas 2006, no pet.).

Thus, we conclude that this Court's holding in *Minns* that "an identifiable evidentiary hearing" is required before the imposition of death penalty sanctions has been effectively overruled.

## (2) Evidentiary Record

Van Es presents several complaints which relate to the issue of whether there is an adequate record to support the imposition of death penalty sanctions. Van Es argues:

- the Fraziers presented no evidence at any of the hearings to support the imposition of sanctions;
- he had inadequate notice of threatened sanctions because he received two of the trial court's discovery orders only shortly before the deadlines imposed in those orders;
- the trial court failed to comply with its "oblig[ation] to investigate what caused [Van Es's] noncompliance with its prior orders" because such an inquiry would have revealed:

 (a) the Fraziers' discovery requests and the court's prior discovery orders were vague because the Fraziers had not amended their pleadings to seek damages from Van Es and the court's initial order on the Fraziers' motion to compel was never reduced to writing; and

 (b) the noncompliance was wholly the fault of Van Es's counsel and Van Es should not be punished for his counsel's failure to comply with the court's orders; and

- the Fraziers presented no evidence that they were prejudiced by Van Es's failure to respond to the discovery requests at issue.

The standard of review for an order imposing discovery sanctions is well established.

A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard. The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." The trial court's ruling should be reversed only if it was arbitrary or unreasonable.

*Cire,* 134 S.W.3d at 838–39 (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)) (other citation omitted). We address Van Es's complaints with this standard in mind.

The choice of which discovery sanctions to impose lies within the discretion of the trial court, but any sanction imposed must be "just." *Spohn Hosp. v. Mayer,* 104 S.W.3d 878, 882 (Tex.2003) (per curiam) (citing Tex.R. Civ. P. 215.2(b); *TransAmerican Nat. Gas. Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991) (orig. proceeding)); *Tidrow,* 189 S.W.3d at 412. For a sanction to be "just," there must be (1) a direct relationship among the offensive conduct, the offender, and the sanction imposed, and (2) the sanction must not be excessive. *Id.*

A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both.

*Spohn Hosp.,* 104 S.W.3d at 882.

However, a trial court is not required to make a specific finding that the party (as opposed to the attorney) abused the discovery process to impose sanctions. *Am. Flood Research, Inc. v. Jones,* 192 S.W.3d 581, 583 (Tex.2006) (per curiam). Rather, the entire record must be reviewed to determine whether sanctions are warranted. *Id.*

Factors other than "evidence" actually introduced at the sanctions hearing may be justifiably considered by the court in its decision to impose a sanction. During appellate review, the entire record, including the "evidence," arguments of

counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse, must be examined.

*U.S. Fid. & Guar. Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex.App.-Waco 1992, writ denied); *accord Sherman v. Triton Energy Corp.,* 124 S.W.3d 272, 278 (Tex.App.-Dallas 2003, pet. denied); *see also Am. Flood Research,* 192 S.W.3d at 583.

### (a) Lack of Evidence

■■■ Van Es argues that the Fraziers presented no "evidence" at any of the hearings to justify the imposition of sanctions. However, a trial court may consider factors other than "evidence" in determining whether to impose a discovery sanction. *Id.* Thus, the court did not abuse its discretion by imposing sanctions even though the Fraziers did not formally present "evidence" in the sanctions hearings.

### (b) Adequacy of Notice

■■■ Van Es argues that his failure to comply with the May and August 2005 discovery orders was justified because he did not receive notice of these orders until shortly before the deadlines imposed therein. Nevertheless, even assuming Van Es did not receive the orders until shortly before these deadlines, the chronological history of the discovery disputes in this case suggest that this factor does not weigh in his favor. *See Rossa,* 830 S.W.2d at 672 ("the circumstances surrounding the party's alleged discovery abuse must be examined"). Accordingly, we now set out the pertinent details of the Fraziers' attempts to obtain discovery from Van Es and the actions Van Es took in response to those attempts.

The Fraziers filed a motion to compel after Van Es failed to produce documents responsive to their second request for production. In a response, Van Es argued, among other things, that (1) production of his financial records was not warranted

because the Fraziers did not seek damages from him in their petition (only injunctive and declaratory relief) and (2) production of documents relevant to the Fraziers' nuisance and trespass claims was not warranted because those claims were barred by limitations. At the October 2004 hearing on the motion to compel, the court heard argument of counsel on these issues and overruled Van Es's objections.

Nevertheless, the issue of whether the Fraziers needed to amend their pleadings to seek damages from Van Es was discussed throughout the hearing. The Fraziers' counsel stated that they would replead if they needed to, "but we are most certainly seeking monetary damages against Van Es Dairy." The court never ordered the Fraziers to replead, but the court apparently thought an amendment would be advisable when the court stated, "[S]ounds like he's going to cure the damages issues with an amended petition." The court then heard Van Es's specific objections with respect to each of the Fraziers' thirty-five requests for production. The parties agreed to time limitations with regard to some of the requests and the court generally overruled Van Es's objections with a few exceptions.

The court ordered Van Es to produce documentation responsive to the Fraziers' requests. However, the court did not specify a deadline for Van Es's compliance and did not reduce this ruling to writing. *Cf. Chapa v. Garcia,* 848 S.W.2d 667, 670 n. 5 (Tex.1992) (orig. proceeding) (Doggett, J., concurring) (describing how Supreme Court had previously ordered trial court "to reduce to writing his oral ruling" on discovery dispute).

Nearly sixty days later, the Fraziers' counsel faxed a letter to Van Es's counsel advising that the deadline for production of the requested documents "has long since past" [sic] and demanding that the

documents be produced by December 2, which was two days after the letter was faxed. Van Es did not produce the requested documents, so the Fraziers filed their first motion for sanctions in January 2005. The motion was set for hearing on February 15. However, Van Es had filed his first mandamus petition with this Court the day before the Fraziers filed their motion for sanctions, so the hearing was delayed until May 17.

Van Es did not appear for the May 17 hearing. After hearing argument of counsel, the court granted the motion. The court ordered Van Es to produce the requested documents on or before June 15 and ordered that the depositions of Van Es and his wife be conducted on or before June 30. The court further ordered Van Es and his counsel to pay $1,500 in attorney's fees as a discovery sanction. However, this order was not signed until May 31.

After Van Es failed to comply with the May 31 order, the Fraziers filed a second motion for sanctions on July 19. This time, Van Es filed a response on August 12, the date of the hearing. Among other things, Van Es argued that sanctions were not warranted because: (1) his duty to respond (per the court's oral order of October 2004) had not yet arisen because the Fraziers' had never amended their pleadings to seek monetary damages from him; (2) the Fraziers' claim for injunctive relief was moot because he had surrendered his TCEQ dairy permit and moved out of state; (3) he did not receive a copy of the May 31 sanctions order until the second week of June; and (4) the Fraziers had never issued a deposition notice for him or his wife.

Van Es's counsel made each of these arguments at the August 12 hearing. The court rejected them and ordered Van Es to produce the requested documents within thirty days and pay an additional $1,500 as a discovery sanction. The court also ordered that Van Es appear for deposition within forty-five days. Finally, the court advised that, if these orders were not fully complied with, then Van Es's pleadings would be struck. The court's written order was entered on August 18.[2] This order more specifically provided that: (1) Van Es must produce the requested documents by September 12; (2) Van Es and his wife must appear for deposition on September 21 and; (3) Van Es's pleadings would be struck if the court's order had not been fully complied with by September 26.

Van Es only partially complied with this order, so the Fraziers filed a third motion for sanctions on September 21. Van Es responded with a motion to stay the trial proceedings pending the resolution of the second mandamus petition he would later file with this Court. Meanwhile, the Fraziers filed their supplemental petition to include a request for monetary damages from Van Es, and Van Es's counsel mailed a letter and affidavit to the trial court informing the court of the extent of his compliance with the court's discovery order. Counsel advised the trial court of his intent to file the mandamus petition challenging the court's order and stated counsel's belief that the disputed discovery issues "must be resolved before we can completely comply with the order of August 18, 2005." Counsel also informed the court that neither Van Es nor he had received a copy of the August 18 order "until the late afternoon of September 12."

This Court summarily denied Van Es's mandamus petition on December 7. However, Van Es did not make any effort thereafter to comply with the August 2005 order. Thus, on February 2, 2006, the

---

2. The order was signed "this ___ day of August, 2005" and entered on August 18, 2005.

trial court signed its final sanctions order striking Van Es's pleadings and prohibiting him from proffering evidence at trial or any hearing.

Van Es seeks to excuse his non-compliance with the May and August 2005 discovery orders by arguing that he did not receive sufficient notice of these orders to comply with them. However, the chronological history we have just recited suggests at least two reasons why any delay in notification to Van Es is not a sufficient basis to set aside the death penalty sanctions: (1) the trial court did not immediately impose death penalty sanctions when Van Es failed to comply; and (2) despite the additional time actually available to Van Es for compliance, there is nothing in the record to indicate that he ever tried to fully or even substantially comply.

First, the trial court did not immediately impose death penalty sanctions when Van Es failed to comply with either order. The May order required Van Es to produce the requested documents and appear for a deposition by certain dates. After these deadlines had passed with no response from Van Es, the Fraziers filed their second motion for sanctions. The August order was entered in response to this second motion. Again, however, the August order did not strike Van Es's pleadings. Rather, it required Van Es to provide discovery responses and appear for his deposition. It concluded by advising that Van Es's pleadings *would be struck* if he failed to comply. In response, Van Es advised that he was seeking mandamus relief in this Court to challenge the August sanctions order. Van Es asked the trial court to stay further proceedings pending resolution of the mandamus proceedings in this Court. Although the trial court never formally granted his stay request, that request was effectively granted because the trial court took no further action with regard to Van Es until two months after this Court denied his mandamus petition.

The trial court signed its first sanctions order on May 31. However, the court did not impose death penalty sanctions until more than eight months later. Therefore, even assuming Van Es did not receive copies of the May and August sanctions orders until shortly before the deadlines imposed in those orders, the trial court would not have abused its discretion to conclude that Van Es had ample time for compliance even after the deadlines set by those orders.

And second, despite the additional time available to Van Es for compliance, Van Es made only modest efforts to comply and frequently engaged in dilatory tactics in an apparent effort to avoid complying. Van Es fully aired his objections to the Fraziers' discovery requests on several occasions, and the trial court rejected them. If the trial court's rulings were erroneous, they were subject to review in this Court. Nevertheless, after repeatedly receiving adverse rulings on these discovery issues, Van Es still failed to comply. Therefore, even assuming Van Es did not receive copies of the May and August sanctions orders until shortly before the deadlines imposed, the trial court would not have abused its discretion to conclude that Van Es never intended to comply with those orders.

### (c) Trial Court's Obligation to Investigate Reasons for Non–Compliance

■ Van Es next argues that trial court failed to comply with its "oblig[ation] to investigate what caused [his] noncompliance with its prior orders" because such an inquiry would have revealed: (a) the Fraziers' had failed to amend their pleadings to seek damages from Van Es as per the discussion of the parties and the court in

the first discovery hearing; and (b) the noncompliance was wholly the fault of Van Es's counsel and Van Es should not be punished for his counsel's failure to comply with the court's orders.

■ These arguments focus primarily on whether the sanction imposed is "just." *See Spohn Hosp.,* 104 S.W.3d at 882. To be "just," the sanction must be "directed against the abuse" and "visited upon the offender." *Id.* Thus, in the context of discovery sanctions, the trial court does have an obligation to determine what the "offensive conduct" is and "whether the offensive conduct is attributable to counsel only, to the party only, or to both." *Id.* This determination is made with reference to the entire record, and no specific findings are required. *See Am. Flood Research,* 192 S.W.3d at 583.

Clearly, the "offensive conduct" is Van Es's failure to fully respond to the Fraziers' requests for production and appear for a deposition. Among other things, Van Es argues that the record before this Court is inadequate to establish any failure on his part to comply with his discovery obligations. We disagree. In the October 2004 hearing on the Fraziers' initial motion to compel production, the parties addressed each of the thirty-five items contained in the Frazier's second request for production. Van Es's counsel explained why Van Es had not responded to those thirty-five items, the court heard his objections, and the court overruled them. In the subsequent sanctions hearings, the Fraziers argued that Van Es had still failed to respond to these requests. In support of an August 2005 response to the Fraziers' sanctions motion, Van Es's counsel provided an affidavit explaining the extent of Van Es's compliance with the Fraziers' discovery requests and the reasons he had failed to full comply. The affidavit also included as an attachment Van Es's October 2003 response to the

Fraziers's second request for production, which includes a verbatim recital of the thirty-five production requests. Finally, in a November 2005 affidavit Van Es's counsel fully detailed the extent of Van Es's compliance. In this affidavit, Van Es's counsel explained that, despite his objections, Van Es had produced "additional documents," had paid the $3,000 in attorney's fees imposed as discovery sanctions, but had refused to appear for deposition pending the resolution of his second mandamus proceeding in this Court.

Conversely, the Fraziers' third motion for sanctions identifies with specificity the extent of Van Es's compliance with the prior discovery orders and their second request for production. The Fraziers also specified in this motion the documents which Van Es had failed to produce. Although Van Es contends that he only failed to produce financial records, the Fraziers' third motion for sanctions enumerates a lengthy list of documents which Van Es had failed to produce and which are not financial records. Therefore, the trial court would not have abused its discretion in concluding that Van Es had failed to fully comply with the prior discovery orders requiring production of documents and his appearance for deposition, even if his failure to produce "financial records" was not considered. For this reason, the fact that the Fraziers failed to file their supplemental petition expressly seeking monetary damages from Van Es until relatively late in the trial proceedings is of no moment.

■ Van Es also argues that a more in-depth investigation by the trial court would have led to the determination that his counsel was solely at fault for the failure to comply with the discovery requests. It is true that any discovery sanction must be "visited upon the offender" and the court must attempt to determine

who the true offender is. *See Spohn Hosp.*, 104 S.W.3d at 882. However, "[a] lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of the discovery rules." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 537 (Tex. App.-San Antonio 2004, pet. denied) (citing *TransAmerican Nat. Gas*, 811 S.W.2d at 917).

In *Spohn Hospital*, the Supreme Court reversed a sanctions order because "the record contains no evidence that the sanctions were 'visited on the offender.' In fact, neither the trial court nor the court of appeals discusses whether counsel or their clients were responsible for the discovery abuse." *Id.* at 883.

Here, the trial court did not make an express determination concerning the extent of Van Es's personal culpability for the failure to comply. However, there are indications in the record that Van Es was personally aware of the ongoing discovery dispute. For example, Van Es's counsel recites in his August 2005 response to the Fraziers' second sanctions motion that "Mr. Van Es did not receive a copy of the [May 31 sanctions order] until the second week of June." [3] Similarly, in counsel's September 2005 affidavit demonstrating the extent of Van Es's compliance, counsel stated, "Neither I, nor Mr. Van Es, received [the August 18 sanctions] order until the late afternoon of September 12." From these recitations, the trial court would not have abused its discretion to infer that Van Es personally received copies of the trial court's sanctions orders on the dates indicated.

In addition, the shear length of time involved in this discovery dispute belies any assertion that Van Es had no involvement in the discovery violations. In *Spohn Hospital*, the discovery sanction which the Supreme Court set aside arose from an April 1999 request for disclosure. *See Spohn Hosp.*, 104 S.W.3d at 880. The trial court imposed the sanctions at issue (an order that certain disputed facts would be taken as established under Rule of Civil Procedure 215.2(b)(3)) after hearing the plaintiffs' initial sanctions motion. The court entered this sanctions order in January 2000, only nine months after the plaintiffs served the discovery request which gave rise to the sanction and without any indication that lesser sanctions were considered. *Id.* at 881.

Here, the Fraziers served their second request for production on Van Es in September 2003. They filed their motion to compel production in August 2004. Thereafter, a series of sanctions motions and responses were filed, and several hearings were conducted. As a result of these hearings, the trial court imposed several intermediate sanctions. Van Es also filed two original proceedings with this Court. Finally, in February 2006, the trial court imposed death penalty sanctions. It would simply defy logic to conclude that Van Es had not consulted with his attorney during this time period regarding the status of the litigation. It would likewise defy logic to conclude that counsel had filed two mandamus proceedings in this Court regarding the venue and discovery disputes without consulting Van Es. *See Am. Flood Research*, 192 S.W.3d at 584 ("While there is no direct evidence that the employees knew of the depositions and deliberately failed to attend, in the context of an enduring attorney-client relationship, knowledge

---

**3.** In this response, Van Es's counsel was careful to distinguish between "Mr. Van Es" and "Counsel for Mr. Van Es."

acquired by the attorney is imputed to the client.").

No specific findings are required on these issues. *Id.* at 583. From our review of the entire record, we cannot conclude that the court abused its discretion by imposing sanctions without conducting a more in-depth investigation of the causes of Van Es's non-compliance.

### (d) Prejudice

■ Van Es next argues that death penalty sanctions were not warranted because the Fraziers failed to present evidence that they were prejudiced by his non-compliance. This contention likewise relates to the "justness" of the sanctions imposed.

"[A] just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Cire,* 134 S.W.3d at 839 (quoting *Trans-American Nat. Gas,* 811 S.W.2d at 917). However, no "specific findings" are required on this issue, and our review extends to the entire record and is not limited to "evidence" offered at a hearing. *See Am. Flood Research,* 192 S.W.3d at 583.

Here, the discovery at issue was relevant to the Fraziers' claims that Van Es operated his dairy in violation of state law and that the manner in which he operated the dairy, particularly his handling of bovine waste, caused damage to their property. The sanctions imposed were directed against Van Es's refusal to comply with the Fraziers' discovery requests and toward remedying the prejudice the Fraziers would suffer if they were forced to prosecute their claims at trial without full disclosure of the relevant documentary evidence. *See HRN, Inc. v. Shell Oil Co.,* 102 S.W.3d 205, 218 (Tex.App.-Houston [14th Dist.] 2003), *rev'd on other grounds,* 144 S.W.3d 429 (Tex.2004); *see also Cire,* 134 S.W.3d at 842–43; *Adams v. Allstate County Mut. Ins. Co.,* 199 S.W.3d 509, 513 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *In re J.D.N.,* 183 S.W.3d 128, 132 (Tex.App.-Dallas 2006, no pet.).

Thus, no abuse of discretion is shown by any failure of the Fraziers to proffer "evidence" of the manner in which they were prejudiced by Van Es's failure to comply with their discovery requests.

### (3) Consideration of Lesser Sanctions

Finally, Van Es argues that death penalty sanctions were not warranted because the trial court failed to consider lesser sanctions. However, the record directly belies this assertion.

First, the court imposed a monetary sanction on Van Es and his counsel in May 2005 because of their failure to comply. Second, the court imposed an additional monetary sanction in August 2005. *See Cire,* 134 S.W.3d at 840 (citing *Trans-American Nat. Gas,* 811 S.W.2d at 918). In both orders, the court required Van Es to appear for deposition by a date certain. *Id.* The court's August sanctions order also warned Van Es that failure to comply would result in the striking of his pleadings. *See HRN,* 102 S.W.3d at 218 (such a warning is, in itself, a lesser sanction). Finally, several months after these lesser sanctions had failed to accomplish their primary objective (*i.e.,* Van Es's compliance with the Fraziers' discovery requests), the court imposed death penalty sanctions. Thus, the record affirmatively demonstrates that the trial court attempted to achieve compliance by the imposition of lesser sanctions.

### (4) Summary

The record provides ample support for the trial court's decision to impose death penalty sanctions. Van Es persistently failed to comply with the Fraziers' legitimate discovery requests. The court attempted several lesser sanctions which failed to effectuate compliance. Thus, the

court was justified in assuming that Van Es's defenses lacked merit. *See Hernandez v. Mid–Loop, Inc.,* 170 S.W.3d 138, 144 (Tex.App.-San Antonio 2005, no pet.); *Chasewood Oaks Condominiums Homeowners Ass'n v. Amatek Holdings, Inc.,* 977 S.W.2d 840, 845 (Tex.App.-Fort Worth 1998, pet. denied). For these reasons, no abuse of discretion is shown, and we overrule Van Es's first issue.

### Attorney's Fees

Van Es contends in his second issue that the court's award of attorney's fees is erroneous because the Fraziers did not request attorney's fees in their summary judgment motion, there is no contractual or statutory basis for the award, and there is no evidence to support the award. The Fraziers respond that Van Es has not preserved this issue for appellate review and that the record contains sufficient evidence to support the award.

Regarding preservation of error, Rule of Appellate Procedure 33.1(d) provides that a no-evidence or factual insufficiency complaint "may be made for the first time on appeal" in a nonjury case. Tex.R.App. P. 33.1(d). Moreover, the judgment in this case was effectively a default judgment because Van Es's pleadings were struck and he was prohibited from presenting evidence. In this situation, no-evidence and factual insufficiency complaints may likewise be made for the first time on appeal. *See Argyle Mech., Inc. v. Unigus Steel, Inc.,* 156 S.W.3d 685, 687 & n. 1 (Tex.App.-Dallas 2005, no pet.).

The Fraziers filed a traditional summary judgment motion in which they alleged

that they were entitled to judgment as a matter of law on their claims that Van Es committed actionable trespasses on their property, that his conduct created a nuisance, and that his negligent acts caused them to suffer damages. The Fraziers did not seek attorney's fees in this summary judgment motion, and they did not present any summary judgment evidence to support an award of attorney's fees. Nevertheless, the court awarded attorney's fees to the Fraziers in the partial summary judgment.[4]

To prevail on a traditional summary judgment motion, a plaintiff-movant must conclusively establish each element of its claim. *Brazos Valley Community Action Agency v. Robison,* 900 S.W.2d 843, 845 (Tex.App.-Corpus Christi 1995, writ denied); *Safeco Ins. Co. v. Gaubert,* 829 S.W.2d 274, 278 (Tex.App.-Dallas 1992, writ denied); *cf. Davis v. City of Grapevine,* 188 S.W.3d 748, 755 (Tex.App.-Fort Worth 2006, pet. denied) (defendant-movant must conclusively establish each element of its affirmative defense to prevail on traditional summary judgment motion). The plaintiff-movant satisfies this burden if it produces sufficient evidence to support an instructed verdict at trial. *Brazos Valley Community Action Agency,* 900 S.W.2d at 845. Stated another way, the plaintiff-movant must produce summary judgment evidence which establishes each element of its claim as a matter of law. *See Davis,* 188 S.W.3d at 755.

Here, the Fraziers presented no summary-judgment evidence which would support an award of attorney's fees. Thus, we sustain Van Es's second issue.[5]

---

4. This is borne out by the fact that the partial summary judgment awards attorney's fees to the Fraziers and, at the "final hearing," the Fraziers' counsel advised the trial court that the only remaining issue was exemplary damages.

5. Because the attorney's fees were awarded in the partial summary judgment and because the parties did not file competing summary-judgment motions, we will reverse and remand on the issue of attorney's fees. *See Morales v. Morales,* 195 S.W.3d 188, 192–93 (Tex.App.-San Antonio 2006, pet. denied).

## Exemplary Damages

 Van Es contends in his third issue that there is no evidence to support the award of exemplary damages.[6] Because an entitlement to exemplary damages must be established by clear and convincing evidence, an elevated standard of review applies. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex.2004).

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient. *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002)).

Exemplary damages may be recovered if the plaintiff establishes by clear and convincing evidence that the defendant acted with fraud, malice, or gross negligence. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp.2006). Here, the Fraziers allege in their supplemental petition that Van Es acted with malice and with gross negligence.[7] Section 41.001(11) of the Civil Practice and Remedies Code defines "gross negligence" as an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(11) (Vernon Supp.2006). The threshold issue of whether a plaintiff is entitled to exemplary damages in any amount rests on the existence of clear and convincing evidence to support a finding of fraud, malice, or gross negligence as those terms are defined by section 41.001. *See Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 372–73 (Tex.2004).

---

6. As with Van Es's challenge to the award of attorney's fees, his contention that there is no evidence or factually insufficient evidence to support the award of exemplary damages "may be made for the first time on appeal." *See* TEX.R.APP. P. 33.1(d).

7. The Fraziers specifically allege that Van Es acted with "gross negligence." They also allege that he "acted intentionally and will callous disregard for the rights of others." This latter allegation is tantamount to an allegation of malice. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7) (Vernon Supp.2006) (" 'Malice' means a specific intent by the defendant to cause substantial injury or harm to the claimant.").

At the hearing on exemplary damages, the court took judicial notice of the pleadings and evidence on file in the case, including particularly the summary judgment evidence. The summary record contains evidence that Van Es incorrectly designated the Fraziers' property as lying within his dairy's "waste management field" in documents filed with TCEQ; that he improperly disposed of the bovine waste from his dairy in a manner which allowed it to regularly enter the Fraziers' property in large quantities; that the flow of bovine waste onto the Fraziers' property has rendered the property virtually uninhabitable; that he acknowledged to Danny Frazier that he was engaging in this conduct; and that he acknowledged that the manner in which he was disposing of bovine waste was contrary to the law.

Viewed in the light most favorable to the judgment, the Fraziers presented clear and convincing evidence that Van Es disposed of bovine waste created on his dairy in a manner which created "an extreme degree of risk" to the Fraziers and their property. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(11)(A). And Van Es's statements to Danny Frazier constitute clear and convincing evidence that Van Es (1) had actual awareness of this risk but (2) nevertheless proceeded with conscious indifference to the Fraziers' rights. *Id.* § 41.001(11)(B).

Because the Fraziers presented clear and convincing evidence which supports the award of exemplary damages, we overrule Van Es's third issue.

### Conclusion

We affirm the trial court's findings of liability and its award of exemplary damages. We reverse that portion of the judgment awarding attorney's fees to the Fraziers and remand this cause to the trial court for further proceedings consistent with this opinion.