

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00073-CV

**JEFFREY SCOTT LOCKHART,**

                                                                        **Appellant**

 **v.**

**DALE PATRICK MCCURLEY**
**D/B/A MIDLOTHIAN INSURANCE AGENCY,**

                                                                        **Appellees**

_____

**From the County Court at Law**
**Ellis County, Texas**
**Trial Court No. 09-C-3400**

---

## MEMORANDUM  OPINION

---

Dale Patrick McCurley d/b/a Midlothian Insurance Agency initially sued Jeffrey Scott Lockhart, his former employee, for breaches of contract and fiduciary duty and for unfair competition.  As a discovery sanction, the trial court struck Lockhart's pleadings and rendered a default judgment against him.  After a bench trial was held on McCurley's unliquidated damages, a judgment awarding McCurley nearly $1.4 million in actual and exemplary damages and attorney's fees was entered against Lockhart.  In this appeal, Lockhart asserts seventeen issues.

**Background**

McCurley's agency primarily handles commercial property and casualty insurance. Lockhart, who has been an insurance agent since 1990, became employed by McCurley in 2003 as a producer to develop and sell new insurance business for McCurley. According to McCurley, Lockhart understood that the business he would be bringing in would belong to McCurley. On August 30, 2007, Lockhart signed an employment contract with McCurley; it provided that McCurley's agency owns the accounts obtained or serviced by Lockhart. The contract had a two-year non-compete provision.[1] It also contained provisions requiring Lockhart (1) to exclusively devote his "time, energy, attention and best efforts" to the performance of his duties for McCurley "during regular and customary working hours;" (2) to obtain McCurley's written consent to represent or be engaged by another business or to be engaged in any other business or enterprise while he was employed by McCurley; and (3) to not disclose McCurley's confidential business information.

Because McCurley did not specialize in group health or life insurance, it typically referred potential customers in those areas to an authorized referral market (an outside

---

[1] The non-compete provision states:

> 10. NON-COMPETE – BUSINESS. Employee agrees that he/she will not within a period of two (2) years following the date of his/her termination of employment with the Agency, or his/her retirement therefrom, directly or indirectly, by or for himself/herself or as the agent of another, or through all others as his/her agent: (a) divulge the names of the Agency's policy holders or accounts to any other person, firm or Agency; (b) in any way seek to induce, bring about, promote, facilitate, or encourage the discontinuance of or in any way solicit for or on behalf of himself or others, or in any way quote rates, accept, receive, write, bind, broker, or transfer any insurance business, policies, risk or accounts, written, issued, covered, obtained (whether through the efforts of the Employee or not) or carried by the Agency.

broker), and that broker would normally split the commission with McCurley. In August of 2008, after Lockhart's then-girlfriend Jody Sheppard had just become a licensed insurance agent, Lockhart began referring and introducing potential group health, term life, and long-term care insurance customers to Sheppard, who at one point later worked for the Stevens Group, a competitor of McCurley's agency. Among other things, Lockhart gave Sheppard his client and prospect lists from McCurley's agency. Some of the clients who Lockhart referred or introduced to Sheppard were existing McCurley property and casualty customers who were being serviced by authorized referral markets. Also in August of 2008, Lockhart created a Web domain name for his side business, Lockhart Associates. He communicated with Sheppard with an email address with the Lockhart Associates domain.

While employed by McCurley, Lockhart received "trailing" commissions from term life insurance that he had sold before his employment with McCurley, and when some of those life insurance policies expired, Lockhart rewrote them. In this respect, in 2007 Lockhart applied for and was reappointed as an agent for Illinois Mutual Life, with whom he had a preexisting relationship.

Lockhart admitted that did not disclose any of these "side" dealings to McCurley or obtain McCurley's permission to engage in them "on the side." As for Lockhart's appointment as a "professional service provider" for MassMutual Financial Group through a competing agency (the Stevens Group) in September of 2008, Lockhart and McCurley disputed whether Lockhart had disclosed it to McCurley. Lockhart did admit that in February of 2009 he solicited McCurley customers to buy long-term care

insurance from MassMutual through Sheppard.

After McCurley learned of Lockhart's "side" dealings, he fired Lockhart on April 23, 2009. Thereafter, Lockhart's computer at McCurley's agency was examined, and it was determined that Lockhart had copied confidential information onto a thumb drive about ten days before he was fired. Lockhart admitted that he did not immediately return all of McCurley's confidential information; he allegedly returned all of it after entry of a court order. Lockhart also admitted that, after he was terminated, he caused or attempted to cause McCurley customers who had been his "clients" to move their business away from McCurley.

### Sanctions

McCurley sued Lockhart five weeks after firing him and obtained a temporary restraining order. After a hearing, the trial court entered a temporary injunction, which was appealed to this court (and affirmed on March 10, 2010). *Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.). Meanwhile, McCurley served discovery (requests for admission and production and interrogatories) on Lockhart.

McCurley filed three motions to compel discovery responses in February of 2010. The motions also sought sanctions in the form of attorney's fees and additional sanctions as are just. After a hearing before a visiting judge, an April 5, 2010 order compelling Lockhart to respond to interrogatories and the second request for production was entered, but the order reserved a decision on an award of attorney's

fees until trial.[2]

On April 30, 2010, McCurley filed another motion to compel that sought Lockhart's deposition, a response to McCurley's third request for production, and to compel Lockhart's compliance with the first order compelling discovery. At the conclusion of the hearing on the second motion to compel, the trial court entered an order compelling Lockhart to (1) respond to the third request for production and produce written responses and documents responsive to the first order by May 14, and (2) appear for his deposition on May 21. The order did not award sanctions but warned that failure to comply "may be deemed as contempt of this Court and may be punished by fine or confinement, or both." A ruling on an award of attorney's fees was withheld and to be considered at a future hearing. The trial court admonished Lockhart on the record that he was to comply with the order compelling discovery by May 14 and admonished Lockhart's attorney that he was to confer with Lockhart so that Lockhart understood specifically what he had to do to comply with the order.[3]

Lockhart appeared for his deposition, but he allegedly did not provide the

---

[2] Generally, the order required Lockhart to provide discovery on (1) the insurance business that he did on the side after August 1, 2007 and his compensation for that side business, including tax returns or W-2/1099 forms since the 2006 tax year; (2) the insurance business that he referred outside of McCurley's agency; (3) the current or former McCurley clients who Lockhart served and who he communicated with between August 1, 2007 and April 23, 2009, and after April 23, 2009; and (4) documents that he took or copied in the three weeks before he was fired.

[3] Also at that same hearing, Lockhart's attorney was allowed to withdraw upon his certification to the trial court that Lockhart had received both orders compelling discovery and the withdrawal order, that he had reviewed the orders orally with Lockhart, and that he had provided written notice to Lockhart of all pending settings and deadlines. The withdrawing attorney's certification was filed later that day.

ordered discovery by May 14.[4]  All that McCurley allegedly received was a few pages of documents that McCurley had previously produced to Lockhart and a letter from Lockhart to a cell phone carrier requesting his cell phone bills; Lockhart did not respond at all to the third request for production.  He did not produce information about his conduct and outside income while he was a McCurley employee, nor did he produce information on his conduct after he was fired.

As for the deposition (at which Lockhart appeared pro se), he refused to answer questions about (1) income he had earned from selling insurance products on the side to McCurley's current or former customers; (2) the identity of current, former, and prospective McCurley customers who Lockhart had referred outside of McCurley's agency; and (3) information about Lockhart's current clients who were former clients of McCurley.  As for documents of communications between Lockhart and McCurley's current, former, and prospective customers after April 23, 2009, Lockhart admitted having such communications but initially denied having documents evidencing those communications.  He later testified that he had responsive documents he could have produced "if he wanted to."  Lockhart stated his position on the record with regard to communications with current or former McCurley customers:  "Anything that happened after I was terminated I am not going to divulge that information."  He also admitted that, on an ongoing basis, he had been deleting e-mails between himself and McCurley's current and former customers after July 1, 2009.

---

[4] But Lockhart did file a pro se motion to disqualify McCurley's attorney on May 10; it was later denied after an evidentiary hearing.  He subsequently also filed a pro se motion to recuse the trial judge; it too was denied.

McCurley next filed a "motion for imposition of sanctions" on May 26. It sought sanctions for: Lockhart's delayed and inadequate response to a request for disclosure; his evasive responses to requests for admission; his evasive and incomplete answers to interrogatories; his refusal to respond and produce documents in response to multiple requests for production; his refusal to comply with the trial court's two orders compelling discovery; his alleged false testimony and spoliation of evidence; and his pattern of discovery abuse and obstruction. The sanctions motion asserted that "Lockhart's violation of court orders and blatant disregard for the discovery process constitutes egregious misconduct" and that "Lockhart's conduct has not only inhibited Plaintiff's presentation of its case, but also presents an exceptional case which justifies the presumption that Lockhart's claims and defenses lack merit." Thus, McCurley requested that the trial court "impose the most severe sanctions as authorized by" Rule of Civil Procedure 215 and suggested "death penalty" sanctions.

At a June 1 pretrial and motions hearing, Lockhart appeared with his new attorney, Laura Shockley. After denying Lockhart's pro se motion to disqualify McCurley's attorney, the trial court took up McCurley's sanctions motion and required counsel to confer with each other to reach an agreement on discovery. After conferring, Shockley told the trial court that there was no reasonable expectation that they could resolve the issues with trial being one week away. Shockley then asked the trial court to give Lockhart more time to comply because she would explain the discovery procedures to Lockhart and tell him that he has to comply with the discovery orders. The trial court then gave Lockhart 48 hours for a resolution to be reached or the trial

court would consider imposing sanctions.

When no discovery was exchanged or supplemented after 48 hours, McCurley requested and the trial court set an evidentiary hearing on the sanctions motion for June 8, the day trial was to start. At the evidentiary hearing, which Lockhart and Shockley attended, the trial court took judicial notice of the contents of its file and the previous testimony and admitted six exhibits, including Lockhart's May 21 deposition. McCurley provided a condensed history of the proceedings and Lockhart's pattern of conduct in discovery, including his knowledge of the claims and the items requested and that were likely to be requested in discovery, and his subsequent destruction or failure to preserve substantive evidence that he had been ordered to produce. Lockhart did not dispute any of McCurley's allegations, nor did he offer any evidence.

The trial court entered a detailed sanctions order with numerous findings and struck Lockhart's pleadings and rendered a default judgment against Lockhart. After two more trial resettings (occasioned by Shockley's suspension and Lockhart's pro se motion to recuse the trial judge, which was denied), a bench trial on McCurley's damages was finally held before a visiting judge.

We begin with Lockhart's second issue, which complains that he lacked notice that a default judgment might be entered on McCurley's sanctions motion. In his motion, McCurley requested "the imposition of all sanctions available under Texas Rule of Civil Procedure 215 and such other sanctions as are just. … This Court has the authority … to enter sanctions as are authorized by Rule 215 and as are just, including 'death penalty' sanctions." McCurley's motion requested that the trial court "impose

the most severe sanctions as authorized by" Rule 215. And at the June 1 hearing, McCurley argued that Lockhart's conduct "is so severe that it merits the finding that there are no valid claims and defenses" and requested the trial court to "strike [Lockhart's] answer entirely and just go to trial on damages."

Rule 215.2(b)(5) sets out the "death penalty" discovery sanctions, which includes "an order striking out pleadings" and "rendering a judgment by default against the disobedient party." TEX. R. CIV. P. 215.2(b)(5); *see Cire v. Cummings,* 134 S.W.3d 835, 839-41 (Tex. 2004); *see also* O'CONNOR'S TEXAS RULES * CIVIL TRIALS 333 (2011) ("Death-penalty sanctions include dismissal, default judgment, excluding evidence, and jury instructions resolving fact issues in favor of one party."). Because Lockhart had sufficient notice that a default judgment might be entered against him, we overrule issue two.

Lockhart's third issue complains that McCurley's second supplemental petition was not served sufficiently in advance of the June 1 sanctions hearing. Lockhart's position is that, because the second supplemental petition sought more onerous relief, he was entitled to at least six days' notice under Rules of Civil Procedure 21 and 21a before the second supplemental petition could be considered as a basis for the default judgment. *See* TEX. R. CIV. P. 21 (requiring service not less than three days before hearing); *id.* 21a (adding three days when served by mail or fax).

The sanctions motion was served and filed on May 26. The second supplemental petition, which asserted the additional causes of action of fraud by nondisclosure and common-law fraud and sought a permanent injunction, disgorgement, and a

constructive trust, was served on Lockhart by fax and mail on May 28.  Lockhart and Shockley, his second attorney, attended the June 1 pretrial and motions hearing at which the trial court began to hear the sanctions motion.  The hearing was then adjourned to give Lockhart 48 hours to reach a resolution with McCurley on discovery.  When no resolution was reached, the trial court set an evidentiary hearing on the sanctions motion for June 8.  Lockhart did not object or move for a continuance at either hearing regarding the alleged untimely service of the second supplemental petition; he thus has not preserved this issue for appellate review.  TEX. R. APP. P. 33.1(a); *see Low v. Henry,* 221 S.W.3d 609, 618-19 (Tex. 2007); *West v. Northstar Fin. Corp.,* No. 02-08-00447-CV, 2010 WL 851415, at \*12-13 (Tex. App.—Fort Worth Mar. 11, 2010, pet. denied) (mem. op.).  We overrule issue three.

Lockhart's first issue asserts that the trial court abused its discretion in entering death-penalty sanctions—striking Lockhart's answer and rendering a default judgment against him—without first testing lesser sanctions.[5]  We initially note that McCurley cites no authority for his assertion that Lockhart was required to preserve this issue for appellate review, *see generally* TEX. R. CIV. P. 324, but we nevertheless find that Lockhart's pro se motion to reinstate pleadings (complaining that the "sanctions are the most excessive possible and there is no relationship between the sanction and the

---

[5] Because the parties have used the term "death-penalty" sanctions, we have as well.  We note, however, that despite the entry of a default judgment against Lockhart, he was allowed to participate in the trial on damages and did so extensively, and he was not precluded from offering evidence on damages.  Moreover, Lockhart all but admitted to breaching his contract, so the default judgment was not a particularly harsh sanction under the circumstances.  We also note that the striking of Lockhart's pleadings was not particularly harsh because he had pleaded only a general denial; he had not pleaded, and thus did not lose, any affirmative defenses or verified denials.

alleged conduct," and that there had been no prior sanctions order) and pro se motion for new trial (complaining that there had been no prior sanctions order) sufficiently preserved his first issue.

We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *Cire,* 134 S.W.3d at 838. "The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.'" *Id.* at 838-39 (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985)).

Rule 215 requires that any sanctions imposed be "just," and there are two components to measuring whether an imposition of sanctions is just. *Id.* at 839. "First, a direct relationship must exist between the offensive conduct and the sanction imposed, which "means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Id.* (quoting *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991)). Second, the sanctions must not be excessive. *Id.* "In other words, '[t]he punishment should fit the crime ... courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.'" *Id.* "[C]ase-determinative sanctions may only be imposed in 'exceptional cases' where they are 'clearly justified' and it is 'fully apparent that no lesser sanctions would promote compliance with the rules.'" *Id.* at 840-41 (quoting *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729-30 (Tex. 1993)); *see also Spohn Hosp. v. Mayer,* 104 S.W.3d 878, 882 (Tex. 2003) (requiring trial courts to

"consider less stringent measures before settling on severe sanctions," but reiterating that death penalty sanctions may only be imposed in the first instance when the facts of the case are exceptional and such a sanction is "clearly justified").

We agree with McCurley that the trial court first tested lesser sanctions with several warnings to Lockhart; the sanctions order even notes: "The Court finds that such sanctions have been imposed only after the Court's progressive and measured efforts to avert such an action."

A warning is a lesser sanction. *See Van Es v. Frazier,* 230 S.W.3d 770, 783 (Tex. App.—Waco 2007, pet. denied); *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 640-42, 96 S.Ct. 2778, 2779-81, 49 L.Ed.2d 747 (1976). The two orders compelling discovery both reserved a ruling on an award of attorney's fees to McCurley, and we agree with McCurley that these were warnings to Lockhart that his non-compliance could result in an award of attorney's fees to McCurley at a later time. And in the second order compelling discovery, Lockhart was warned three times that his failure to comply with any part of the order might be deemed as contempt of court and punishable by fine or confinement, or both. Finally, at the June 1 sanctions hearing when the trial court allowed Shockley, Lockhart's newly appearing attorney, an opportunity to confer with opposing counsel about discovery, the trial court warned them, "If you can't reach an agreement it's going to be straight down the line from this Court, and you'll have to accept what comes here. …" After conferring brought no resolution, Shockley sought more time and asked the trial court to deny the request to strike Lockhart's pleadings. The trial court gave Lockhart 48 hours to reach a

resolution, barring which the trial court would "explore the [Rule] 215 remedies."  The trial court added, "I am expectant, based on what you've said, that some progress can be made," to which Shockley responded, "I understand, and I will make an effort with my client and with [McCurley's attorney] to comply with the existing orders."

Because the trial court tested lesser sanctions with warnings, including giving Lockhart a last chance to comply accompanied with a warning that death-penalty sanctions being sought by McCurley were on the table, the trial court did not abuse its discretion in assessing death-penalty sanctions.  We overrule issue one.

### Continuance

Lockhart's fourth issue asserts that the trial court abused its discretion in denying his oral request for a sixty-day continuance to obtain new counsel after Shockley learned she was administratively suspended on the eve of October 20, 2010 (the case's fourth trial setting) and thus did not appear with Lockhart.  The trial court continued the case to November 17, approximately four weeks later, but because Lockhart filed a verified pro se motion to recuse the trial judge on November 5, that motion was heard on November 17 and the trial did not begin until November 22.

After visiting judge John Marshall had denied Lockhart's motion to recuse and announced that he would preside over the trial, Judge Marshall stated that the bench trial on damages would resume on November 22.  The record shows that Lockhart had been complaining to Judge Marshall about the trial judge's refusal to grant him sixty days to obtain new counsel, but once Lockhart learned that Judge Marshall would preside over the trial, it appears that Lockhart waived his request for more time:

Lockhart v. McCurley                                                                 Page 13

THE COURT:  …  We have reconvened for the purpose of extending the recess of the Trial on the Merits to Monday, November the 22nd, 2010, at 10 a.m., at which time the trial will continue before the Court, … and an order … will be forthcoming to appoint John McClellan Marshall, Senior Judge of the 14th Judicial District, to hear the case at that time.  Does anyone have any objections?

…

[McCURLEY'S COUNSEL]:  No objections, Your Honor.  We agree to proceed in that fashion.

THE COURT:  Very well.  Mr. Lockhart?

MR. LOCKHART:  I agree.

THE COURT:  No objections to any part of that?

MR. LOCKHART:  None.

Lockhart now contends that he was only agreeing to the 10:00 a.m. start time, which accommodated his schedule, but any ambiguity was cleared up when Lockhart announced ready on November 22.  By not objecting on November 17 to proceeding with the trial on November 22 and by announcing ready on November 22, Lockhart cannot complain on appeal that the original trial judge should have granted him sixty days instead of four weeks.  *See Boufaissal v. Boufaissal*, 251 S.W.3d 160, 162 (Tex. App.—Dallas 2008, no pet.) ("a party will not be allowed to complain on appeal of an action or ruling which she invited or induced").  We overrule issue four.

## Findings

The trial judge issued written findings and conclusions that contain eighty-eight findings of fact.  In issue five, Lockhart asserts that we should "unfind" sixty-four

unnecessary findings of fact. We agree with Lockhart that many of these findings are unnecessary evidentiary recitations.

Findings of fact entered in a non-jury case have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex. 1991). Findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994). The trial court must make findings of fact only on controlling issues, not on matters of evidence. *State Farm Life Ins. Co. v. Martinez,* 174 S.W.3d 772, 788 (Tex. App.—Waco 2005), *rev'd on other grounds,* 216 S.W.3d 799 (Tex. 2007). Findings that are evidentiary issues or recitations, rather than controlling issues, are immaterial and thus harmless; they are not binding on appeal. *Cooke County Tax Appr. Dist. v. Teel,* 129 S.W.3d 724, 731-32 (Tex. App.—Fort Worth 2004, no pet.); *Hebert Acquisitions, LLC v. Tremur Consulting Contractors, Inc.,* No. 03-09-00386-CV, 2011 WL 350466, at *10 (Tex. App.—Austin Feb. 4, 2011, no pet.) (mem. op.). Because we disregard the unnecessary evidentiary recitations, we overrule issue five.

### Damages

With a default judgment, a plaintiff seeking to recover unliquidated damages must present evidence of the causal nexus between the event sued upon and the plaintiff's injuries or damages. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 732 (Tex. 1984). The plaintiff must offer proof of his damages and connect the damages to the defendant's conduct. *Id.* A plaintiff must prove unliquidated damages with competent

evidence that is consistent with the pleaded causes of action. *In re Elite Door & Trim, Inc.*, 362 S.W.3d 199, 201 (Tex. App.—Dallas 2012, orig. proceeding).

Lockhart's contract with McCurley has the following liquidated-damages provision:

> 11.  LEGAL EXPENSES AND INJUNCTIVE RELIEF.  In the event of the violation of provisions of this Agreement, Employee understands and agrees that damages may not constitute an adequate remedy to the Agency, therefore the Agency may seek injunctive or other extraordinary relief.  Employee and Agency recognize that monetary damages are insufficient to compensate Agency for breach by Employee.  In the event of any breach of paragraphs 8, 9, 10 of the Agreement by Employee, Agency shall be entitled to damages as follows:
>
> (a)  for any breach occurring within the first twelve (12) month period immediately following the date of termination of employment, damages shall be equal to two (2) times Employee's total commissions booked during the most recently completed calendar year;
>
> (b)  for any breach occurring within the second twelve (12) month period immediately following the date of termination of employment, damages shall be equal to one and one-half (1½) times Employee's total commissions booked during the Employee's last complete calendar year of Employment with the Agency;
>
> Employee also agrees that in the event a suit or action is instituted by Agency against Employee for violation of any of the agreements contained in this Contract of Employment, Employee will pay to Agency, in addition to any costs or disbursements provided by law, all attorney's fees and other expenses of litigation incurred as a result of said suit.  Employee and Agency both agree that the provisions of the Contract of Employment are not subject to arbitration.

McCurley testified that Lockhart's last calendar year of employment was 2008, and McCurley and his office manager testified that Lockhart's total commissions booked for 2008 were $181,720.02.  Applying the above contractual provision, McCurley testified that under paragraphs 11(a) and 11(b), the totals were $363,440.04 and

$272,580.03, for a total figure of $636,020.07. The trial court made findings and conclusions that McCurley's contract damages are $636,020.07.

In issue six, Lockhart asserts there is legally insufficient evidence to support liquidated damages for the second twelve months in the amount of $272,580.03, and he asserts factual insufficiency in the alternative in issue ten. In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When a party complains of the factual sufficiency of the evidence to support an adverse finding, we must consider and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied). We will set aside the finding only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407.

Specifically, Lockhart claims there is no evidence that any breach of contract occurred in the second twelve-month period, from April 24, 2010 through April 23,

2011. Because McCurley responds in part that the spoliation presumption applies to the second twelve-month period, we will also address issue thirteen, which asserts that there is no evidence to support the trial court's spoliation finding or the application of a spoliation presumption.

McCurley first points to Lockhart's testimony that he communicated with McCurley's current and former customers after April 24, 2010, that Lockhart refused to identify them or produce documents reflecting those communications, and that these communications breached the non-compete clause. McCurley also points to the evidence that Lockhart downloaded McCurley's confidential business information within two weeks of his termination. Thus, McCurley concludes that there is evidence that Lockhart communicated and did business with McCurley's current and former customers after April 24, 2010, in breach of the non-compete clause and in violation of the contract's provisions about McCurley's confidential and proprietary business information and property.

In issue thirteen, Lockhart complains that there is no evidence to support the trial court's several spoliation findings (14, 21, and 65) and conclusions (13 and 14). Collectively, these findings and conclusions are that Lockhart refused to produce and spoliated relevant evidence pertaining to McCurley's claims and damages for Lockhart's side business and his solicitation of McCurley's current and former customers after his termination. Conclusion 14 states: "Defendant Lockhart's pattern of discovery abuse and spoliation of evidence justifies the presumptions, inter alia, that (1) Lockhart's defenses lack merit; (2) the unproduced evidence would have been

unfavorable to Lockhart; (3) the destroyed evidence would have been unfavorable to Lockhart." A party's duty to preserve evidence "arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Wal-Mart Stores, Inc. v. Johnson,* 106 S.W.3d 718, 722 (Tex. 2003). A spoliation presumption is proper when the party has destroyed relevant evidence or failed to produce it or explain its non-production. *Id.* at 721-22.

At the trial on damages, the trial court took judicial notice of the prior proceedings, which included the evidentiary hearing on McCurley's sanctions motion.[6] As discussed above, McCurley presented evidence that Lockhart had been deleting e-mails between himself and McCurley's current and former customers, and Lockhart refused to produce documents or provide testimony about his post-termination communications and dealings with McCurley's current and former customers. Because sufficient evidence supports the trial court's findings and conclusions on spoliation, we overrule issue thirteen. And based on the evidence of Lockhart's admission of communications with McCurley's current and former customers after April 24, 2010 and the application of the spoliation presumption to the second twelve-month period, we hold that the evidence is legally and factually sufficient to support the trial court's damages finding and award of liquidated damages for the second twelve months in the

---

[6] The sanctions order stated in relevant part: "The Court finds that Lockhart has had in his actual possession, custody or control information and documentation which Plaintiff had requested and which Lockhart had a duty to preserve, but which Lockhart did not preserve and/or produce, and which he subsequently destroyed or failed to preserve and that Lockhart's actions/inactions, as to such evidence, prejudiced Plaintiff's ability to present Plaintiff's case. Lockhart has provided no reasonable explanation for his spoliation of evidence."

amount of $272,580.03. Issue six and issue ten's alternative factual sufficiency complaints are overruled.

An expert for McCurley, H. Thomas Wilkins III, testified that he quantified the amount that McCurley's agency was devalued by the loss of ten customers that Lockhart had caused to leave McCurley's agency. Wilkins testified that the devaluation of McCurley's agency caused by the loss of those ten customers was $253,874.52. The trial court made a finding (Finding 18) that Lockhart's wrongful activities caused a reduction in value of McCurley's agency in the amount of $253,874.52. Including that amount with the contract damages of $636,020.07, the trial court also made several findings and conclusions that calculated McCurley's total damages to be $889,894.59.

In issue eight, Lockhart contends that the evidence is legally insufficient to support the trial court's lost-value findings of $253,874.52, and he asserts factual insufficiency in the alternative in issue ten. More specifically, Lockhart alleges that McCurley offered no testimony from Wilkins regarding why the value of the ten customers' accounts should be based on total revenue, rather than the actual commissions received by McCurley, and that Wilkins's testimony was therefore conclusory and insufficient to support the trial court's findings.

McCurley responds that Wilkins testified that the devaluation of business caused by the loss of those ten customers was $253,874.52 and that he used one-time annual revenue for those ten accounts and valued them based on keeping the accounts for four years, which Wilkins said was the general industry standard of time needed to receive a return on investment. In other words, according to McCurley, if someone had

purchased the ten accounts from McCurley's agency, the acquisition value would be $253,874.52, based on the gross annual revenue for those accounts over four years. In addition to giving his expert opinion, Wilkins testified about his expertise in the insurance industry and explained the data he relied on and his methodology. On cross-examination, Lockhart asked Wilkins again to explain how he came up with $253,874.52, and Wilkins explained it again. Lockhart's claim that Wilkins's opinion is conclusory because he did not offer a factual basis or an analysis for his lost-value opinion is thus incorrect. Also, Lockhart did not object to Wilkins's testimony, including his foundational data, underlying methodology, or technique, and an objection was required. *See Coastal Transport Co. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). Wilkins's testimony was not conclusory and did not lack probative value. Accordingly, the evidence is legally and factually sufficient to support the trial court's lost-value damage findings of $253,874.52. Issue eight and issue ten's alternative factual insufficiency complaint are overruled.

Issue seven asserts that McCurley's liquidated damages under the contract cannot support a finding of damages for any other cause of action other than breach of contract.[7] Issue nine asserts that the trial court's findings of actual damages for loss of business value are duplicative of the liquidated damages findings, and issue ten asserts

---

[7] To the extent that Lockhart is complaining in issue seven that the trial court awarded liquidated damages for causes of action other than breach of contract, the trial court did not and we thus overrule in part issue seven as moot. And to the extent that this complaint is about the trial court's nomenclature by referring at times to the "liquidated damages" as "damages" or "actual damages" or about the trial court's inclusion of liquidated damages in the total amount of "damages" or "actual damages" awarded to McCurley, that error, if any, is plainly harmless.

alternatively that all of the damages findings are "manifestly too large" because actual damages for loss of business value are duplicative of the liquidated damages findings. Issue twelve asserts that McCurley cannot recover under both a breach of contract theory and a tort theory based on the same measure of damages. Issue seventeen asserts that the trial court's imposition of a permanent injunction and a constructive trust on Lockhart and his accounts is an impermissible double recovery.[8]

All five of these issues complain that the trial court's findings and judgment for both liquidated damages and actual damages for loss of business value constitute an impermissible double recovery. McCurley correctly notes that such a complaint must be preserved in the trial court for appellate review, which Lockhart did not do. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182, 184 (Tex. 1998); *Solomon v. Steitler,* 312 S.W.3d 46, 60-61 (Tex. App.—Texarkana 2010, no pet.). Therefore, issues seven, nine, ten, twelve, and seventeen are overruled.

Issue eleven is related to the just-discussed sufficiency and double-recovery issues. It asserts that the findings and conclusions on McCurley's various tort claims should be set aside because they are not supported by evidence of causation or by any valid findings of damages resulting from those torts. McCurley alleged a claim for breach of fiduciary duty. In Finding 18, the trial court found that Lockhart's wrongful activities caused a reduction in value of McCurley's agency in the amount of $253,874.52, and in Finding 83, the trial court found that Lockhart's breach of fiduciary

---

[8] Issue seventeen appears to also complain that the finding (Finding 16, which identifies the ten accounts that Lockhart wrongfully took from McCurley) supporting the imposition of the constructive trust is not supported by proper findings. We disagree and overrule issue seventeen in this respect because the evidence supports the trial court's finding that these ten accounts were McCurley's.

duty caused McCurley damages in the amount of $889,894.59.

Lockhart first contends that Finding 18 cannot support a finding of tort damages for the same reason (legal sufficiency) asserted in issue eight, but we have overruled issue eight. He next complains that no evidence supports the finding (Finding 83) that Lockhart's breach of fiduciary duty caused $889,894.59 in damages to McCurley, but this too is a reiteration of his sufficiency complaints in issues eight, ten, and thirteen, all of which we have overruled. We repeat that there was sufficient evidence (including Lockhart's admission to soliciting McCurley's current or former customers and the effect of the spoliation presumption) that Lockhart caused the loss of ten identified customers after his termination, and those lost accounts were the basis for the loss of business value in Finding 18. And as for Lockhart's repeated assertion that the $889,894.59 damages amount in Finding 83 includes the liquidated damages and is a double recovery, we have held that this complaint was not preserved for appellate review. Issue eleven is overruled.

Issue fourteen asserts that the punitive damages award in the amount of $100,000 should be set aside because (1) there is no evidence to support an award of tort damages for any cause of action other than breach of contract, and (2) an award of tort damages would be a double recovery of breach of contract damages. Because we have found against Lockhart on both of these issues, we overrule issue fourteen.

Issue fifteen similarly attacks the judgment's award of damages, exemplary damages, and attorney's fees, with Lockhart arguing in his brief that "McCurley cannot recover under both a breach of contract theory and a tort theory based on the same

measure of damages, he likewise cannot recover both attorney's fees and exemplary damages." This is another reiteration of Lockhart's double-recovery complaint that we have rejected as unpreserved, so we thus overrule issue fifteen.

In issue sixteen, Lockhart argues that if we have reduced the amount of actual damages awarded to McCurley, we should remand for a new trial on McCurley's claim for attorney's fees because they must be in proportion to the reduced damages amount. *See, e.g., Southwest Grain Co. v. Garza,* No. 13-04-00409-CV, 2007 WL 1087179, at *14 (Tex. App.—Corpus Christi Apr. 12, 2007, pet. denied) (mem. op). Because we have not reduced damages, we overrule issue sixteen as moot.

### Conclusion

Having overruled all of Lockhart's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed March 28, 2013
[CV06]