LEON'S FINE FOODS OF TEXAS, INC.; Leon's Fine Foods, Inc.; and Leon's Fine Foods, Inc. d/b/a Leon's Texas Cuisine, Appellants,

v.

MERIT INVESTMENT PARTNERS, L.P., Appellee.

No. 11–03–00146–CV.

Court of Appeals of Texas, Eastland.

Feb. 17, 2005.

Gregory Perkes, Perkes Law Firm, P.C., Michael Stuart Lee, Lee Firm, P.C.,

Corpus Christi, John J. Ezell, Dallas, for appellants.

Stephen H. Ramsey, Scott Henderson, James Stabler, Law Office of James M. Stabler, Dallas, William H. Hoffmann, Jr., Eastland, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

TERRY McCALL, Justice.

This is an appeal by Leon's Fine Foods of Texas, Inc. et al (Leon's) from a post-answer default judgment entered in favor of Merit Investment Partners, L.P. (Merit). There was an earlier appeal in this case after a jury trial. *Leon's Fine Foods of Texas, Inc. v. Merit Investment Partners, Ltd.*, No. 05–97–00543–CV, 2000 WL 1048491 (Tex.App.-Dallas 2000, pet'n den'd) (not designated for publication). The Dallas Court of Appeals reversed the trial court's directed verdict for Merit on two of Leon's causes of action and remanded the case for a new trial. This case demonstrates what may happen to a client when its attorney suffers from severe depression.

After the remand, Leon's former attorney failed to file a response to Merit's request for disclosure, failed to answer Merit's interrogatories, and failed to produce Leon's witnesses for deposition. Merit moved to strike Leon's pleadings, to exclude Leon's evidence, and to have a $15,000.00 sanction imposed. The hearing on the motion was held on February 7, 2003. The trial court granted Merit's motion and imposed death penalty sanctions. Leon's former attorney did not attend the sanctions hearing, and Leon's did not know about the sanctions hearing.

Prior to the sanctions hearing, Merit's attorneys on January 22, 2003, sent a request for admissions to Leon's former attorney. Leon's response was due on February 21, 2003, the day that another district court entered a default judgment declaring Leon's attorney disbarred. Apparently unaware that the attorney had been disbarred, the trial court below called the case for trial on February 24, 2003. Upon learning that Leon's attorney had been admitted to a hospital emergency room for chest pains, the trial court stated that it would recess the case until it heard from the attorney. On February 27, 2003, the court heard evidence by Merit, deemed admitted Merit's requests for admissions, and entered a default judgment in favor of Merit. Leon's had been aware of the February 24 trial date, but Leon's attorney had falsely advised the president of Leon's that the trial court had said it would reschedule the trial date. Leon's was unaware of the default judgment hearing on February 27. The trial court entered a corrected final judgment on March 13, 2003. Again, Leon's was unaware of that hearing.

In early April 2003, Leon's president learned of the default judgment. On April 11, Leon's new attorneys timely filed a motion for new trial. Despite the fact that Leon's had no part in the discovery abuse by its former attorney and had no knowledge of the sanctions hearing or the February 27 and March 13 hearings, the trial court denied Leon's motion for new trial. We reverse and remand.

*Background Facts*

This case began in 1993. Leon's sued its former landlord, Merit, alleging fraud, breach of their lease agreement, breach of the covenant of quiet enjoyment, and violation of the Texas Deceptive Trade Practices Act (DTPA). TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 2002 & Supp.2004–2005). Merit counterclaimed, alleging that Leon's had breached

the lease. At the conclusion of the evidence in the first trial before a jury, the trial court granted Merit's motion for directed verdict on each of Leon's causes of action and entered sanctions against Leon's because it found that some of Leon's pleadings were "groundless and brought in bad faith." The trial court's judgment also sustained Merit's counterclaim.[1]

The Dallas Court of Appeals affirmed in part and reversed and remanded in part. *Leon's Fine Foods of Texas, Inc. v. Merit Investment Partners, Ltd., supra.* The court concluded that there was direct evidence sufficient to raise a fact issue on each of the elements of Leon's fraud claim and on Leon's claim that Merit had breached the contract. The court also reversed the trial court's sanction order and rendered judgment that the sanction order was unenforceable against Leon's. The court of appeals issued its mandate on October 24, 2001.

Steven Edward Rogers, Leon's former attorney, began having mental problems in 2001. In October 2001, other clients began filing grievances against Rogers with the State Bar. Rogers was failing to attend hearings, failing to keep clients informed, misrepresenting matters to clients, allowing default judgments to be entered, and allowing his clients' cases to be dismissed. On July 11, 2002, the Evidentiary Panel of the State Bar's Grievance Committee found Rogers guilty of professional misconduct and placed him on probation for 12 months. One of the conditions for probation was that Rogers obtain "a complete psychiatric/psychological evaluation by a psychiatrist/psychologist" and submit the results to the State Bar by October 1, 2002. Rogers failed to comply with that condition.

On October 21, 2002, the Chief Disciplinary Counsel for the State Bar filed a petition with the Collin County District Court for immediate interim suspension of Rogers. The petition recited that on or about September 20, 2002, the State Bar District 1A Grievance Committee had found that Rogers posed a substantial threat of immediate and irreparable harm to clients. Despite the urgent nature of the State Bar's petition, the district court did not hold a hearing for months. These proceedings ultimately ended with a default judgment dated February 21, 2003, disbarring Rogers.

At some point, Merit's attorneys began monitoring the State Bar website. On September 17, 2002, Merit filed a Motion to Plaintiff Leon's To Show Authority, alleging that Rogers was not eligible to practice law in Texas. The pleading requested that Rogers and Bob Clements, Leon's president, be cited to appear before the trial court; however, the certificate of service shows that only Rogers was served with a copy of the pleading. No hearing was held on Merit's motion.

On November 1, 2002, Merit's attorneys noticed the oral deposition of Rogers for November 8, 2002. The *subpoena duces tecum* required Rogers to produce all correspondence with the State Bar's Chief Disciplinary Counsel and any grievance committee since 1990 and to produce all written documents relating to times when Rogers was not authorized to practice law in Texas or was not authorized to represent that he was board certified. Rogers

1. The trial court found that the lease terminated on December 30, 1993; that Leon's failed to vacate the premises; and that Leon's owed Merit the fair market rental value of $9,695.00 per month for the period from January 1, 1994, through January 31, 1995. Leon's tendered $99,206.16 into the registry of the court; later, that amount was paid to Merit.

did not respond, and he failed to appear for his deposition on the rescheduled date of November 11.

On January 22, 2003, Rogers filed with the trial court below a letter written by Dr. Mitchell Dunn, a psychiatrist. Dr. Dunn's letter was addressed to the district judge in Collin County where the State Bar was seeking Rogers's disbarment. Dr. Dunn had first seen Rogers on March 1, 2002, and had diagnosed Rogers with Major Depressive Disorder, Severe. Dr. Dunn had placed Rogers on medication, and Rogers had attended weekly psychotherapy sessions. Dr. Dunn stated that, in his opinion, Rogers had responded well to the treatment and that he thought that Rogers would continue to do well.

Merit's attorneys were aware that Rogers had not improved despite Dr. Dunn's opinion. At the sanctions hearing on February 7, 2003, which Rogers failed to attend and Leon's did not know about, Merit advised the trial court and the trial court found that Leon's had failed to file any written response to Merit's First Supplemental Interrogatories which were first served on October 16, 2002; that Merit had served notices on Leon's to take the oral depositions of Leon's witnesses and Leon's attorney had failed to produce the noticed witnesses on November 11, 2002, and November 25, 2002; that Leon's had failed to comply with a TEX.R.CIV.P. 11 discovery agreement dictated to the court reporter at a pretrial conference held on December 4, 2002, which required Leon's to answer Merit's Request for Disclosure and Merit's First Supplemental Interrogatories and required Leon's to produce its witnesses for deposition; and that Leon's had been ordered to file an amended pleading and had failed to so.

Merit's attorneys served Rogers on January 22, 2003, with Merit's First Request for Admissions. Leon's responses to these requests for admissions were due on February 21, 2003 (the day that the district court in Collin County declared Rogers disbarred). Rogers, of course, did not respond; and Leon's did not know about Merit's First Request for Admissions. Merit's First Request for Admissions was an obvious attempt to have Leon's, through deemed admissions, admit that it had no causes of action. Typical of the requests were that Leon's admit the following:

REQUEST NO. 1: Defendant Merit did not act to defraud Plaintiff Leon's of its existing property rights in the parties' lease agreement.

REQUEST NO. 2: Defendant Merit did not make any material misstatements of fact to Plaintiff Leon's regarding the parties' lease agreement.

REQUEST NO. 3: Defendant Merit did not make any false statements to Plaintiff Leon's regarding the parties' lease agreement.

REQUEST NO. 4: Defendant Merit made no fraudulent misrepresentations to Plaintiff Leon's regarding the parties' lease agreement.

REQUEST NO. 5: Defendant Merit did not breach any provision of the parties' lease agreement during the time Plaintiff Leon's occupied the lease premise.

Yet, the court of appeals had held that there were fact questions related to these issues raised by the evidence in the first trial. *Leon's Fine Foods of Texas, Inc. v. Merit Investment Partners, Ltd., supra.* From the requests, it is obvious that Merit anticipated that Rogers would not respond to them on behalf of Leon's. On remand, Leon's will have an opportunity to file a motion to withdraw the admissions. The current state of the record demonstrates that Leon's has shown good cause for their withdrawal.

### The Trial Court Erred in Imposing Death Penalty Sanctions

■ We review the imposition of sanctions by a trial court for an abuse of discretion. *Chrysler Corporation v. Blackmon,* 841 S.W.2d 844, 853 (Tex.1992)(original proceeding).

■ Rogers failed to attend the February 7, 2003, sanctions hearing, and Leon's did not know about the hearing. Yet, that hearing would have been an opportune time for the trial court to acquaint Leon's with Rogers's failings and mental problems. Requiring Leon's to appear would also have enabled the trial court to follow the requirements of *TransAmerican Natural Gas Corporation v. Powell,* 811 S.W.2d 913 (Tex.1991)(original proceeding).

*TransAmerican Natural Gas Corporation v. Powell, supra* at 917, held that an imposition of sanctions must be measured by two standards: (1) a direct relationship must exist between the offensive conduct and the sanction imposed and (2) the "punishment should fit the crime." The first standard requires a trial court to determine whether the offensive conduct was attributable to counsel only, or to the party only, or to both. The second standard requires a trial court to consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

Although Merit could have filed another motion for Leon's to show Rogers's authority, Leon's was not cited to appear at the sanctions hearing. And Rogers did not tell Leon's about the sanctions hearing. At the outset of the hearing, Merit's attorney told the court that "Mr. Rogers'[s] phone has been disconnected, and [Merit's attorney had] since December been personally delivering mail to Mr. Rogers'[s] mailbox in McKinney." Merit's attorneys introduced no evidence that Leon's was at fault for Rogers's numerous failings, and the trial court made no effort to determine whether Rogers's offensive conduct was attributable to Leon's actions.

At Leon's motion for new trial, Merit argued (and argues here) that Leon's president was made aware of the discovery abuses at his deposition in September 2002. There was a heated exchange between Rogers and Merit's attorney at Clements's deposition. At one point, the following was said:

[MERIT'S ATTORNEY]: How about the sanctions, Steve? Let's talk about sanctions. You've got 14 against you now, public reprimands by the Bar?

MR. ROGERS: You know that's grievable what you just said?

As the argument between the two attorneys continued, Clements finally said that he had other things to do if they were not going to take his deposition. Merit's attorney then asked Clements if he was aware that Leon's had only two remaining causes of action left in this lawsuit, and Clements responded: "That's a legal question, and Mr. Rogers would have to." At that point, Rogers interrupted claiming that Merit's question was an invasion of attorney-client privilege. Merit's attorney then questioned Clements about a "death penalty":

Q. Are you aware that next Friday, both parties are going to be submitting written affidavits on our motion to exclude all fact witnesses, expert testimony, and damage testimony because there was a failure by your attorney to respond to a request for disclosure that Merit had sent him?

A. I am sure that's something he handled.

Q. Okay. Are you aware that if the Judge rules in our favor, it could be the

death penalty for you, and this case is all over with?

A. There is no death penalty to me in this case.

Q. I am sorry.

A. There is no death penalty to me in this case.

Q. I don't understand what that means.

A. Well, it's a stupid question, so it's a stupid answer. I don't know what you mean by death penalty.

Q. Okay. That your lawsuit is dismissed.

A. That's the decision of the Judge.

Even if the foregoing portion of Clements's deposition had been introduced at the sanctions hearing, it was not a sufficient basis for imposing death penalty sanctions on Leon's. The Texas Supreme Court has said that "death penalty sanctions should not be used to deny a trial on the merits" unless the guilty party's conduct is so bad that it "justifies a presumption that its claims or defenses lack merit." *Hamill v. Level,* 917 S.W.2d 15 (Tex.1996); *Chrysler Corporation v. Blackmon, supra* at 851; *TransAmerican Natural Gas Corporation v. Powell, supra* at 918. The court of appeals in *Leon's Fine Foods of Texas, Inc. v. Merit Investment Partners, Ltd., supra,* determined after reviewing the trial record that there were fact questions on Leon's fraud and breach of contract claims. That holding rebutted any presumption that Leon's claims lacked merit. Moreover, there was no evidence that Leon's engaged in "bad conduct."

The exchange at Clements's deposition was not sufficient to blame Leon's for Rogers's conduct. It is arguable that the brief exchange was not even sufficient notice to Clements to make further inquiries. Unfortunately, many attorneys engage in ag-gressive behavior and hyperbole before clients. To make any meaningful inquiries, Leon's would have had to employ another attorney to check on Rogers. Clements testified at Leon's motion for new trial hearing that he did not understand the term "death penalty" or the legal procedures referred to by Merit's attorney. Clements later asked Rogers about Merit's questions to him, and Rogers told Clements that the hearing referred to by Merit was not going to take place. Despite Merit's attorney's statement that the trial judge would rule the "next Friday," nothing happened, just as Rogers said.[2] Rogers had been Leon's attorney for 12 years, and Clements had no reason to doubt Rogers's statements to him. Clements said that he had "trusted [Rogers] like a brother."

In view of *TransAmerican's* requirement that the trial court determine whether the offensive conduct was attributable to counsel or the client, Merit's attorneys could have requested that the trial court cite Leon's to have a representative at the sanctions hearing. The trial court, of course, could have required Leon's attendance on its own after reviewing Merit's reasons for sanctions. There is no evidence of any offensive conduct by Leon's. The trial court also should have considered lesser sanctions. The trial court abused its discretion. *Wetherholt v. Mercado Mexico Cafe,* 844 S.W.2d 806 (Tex.App.-Eastland 1992, no writ).

We sustain Leon's second issue that the trial court erred in imposing "death penalty" sanctions and reverse the trial court's imposition of sanctions against Leon's. Our holding that Leon's should have been cited to appear at the sanctions hearing is limited to the facts of this case. We need not reach Leon's third issue, that a trial

**2.** A sanctions hearing was ultimately held 5 months later on February 7, 2003.

court must require actual notice to a client in every case before death penalty sanctions are imposed.

### The Default Judgment

■ *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939), held that a trial court is required to set aside a default judgment and order a new trial where (1) the failure of the party to appear was not intentional or the result of conscious indifference on its part but was due to a mistake or an accident; (2) the motion for new trial sets forth a meritorious claim or defense; and (3) granting the motion will not occasion delay or otherwise work an injury to the other party. *Cliff v. Huggins,* 724 S.W.2d 778, 779 (Tex.1987), held that the *Craddock* requirements apply to a post-answer default judgment. The court in *Lopez v. Lopez,* 757 S.W.2d 721, 722–23 (Tex.1988), held that, if the party had no actual or constructive notice of the default judgment trial, lack of notice satisfies the first *Craddock* requirement and that the party does not have to satisfy the other two requirements.

Merit argues that Leon's was required to show that Leon's failure to appear on February 24 was not because of the "conscious indifference" of both the attorney and the client. Leon's made that showing. We agree that, when a defaulting party has an attorney, the party must demonstrate that the agent attorney did not act with conscious indifference in failing to appear at a hearing. *Holt Atherton Industries, Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex.1992). However, Rogers automatically ceased being Leon's attorney on February 21, 2003, when he was declared disbarred. Thus, the record shows that Rogers did not act with "conscious indifference" in failing to appear on February 27; he couldn't appear as Leon's attorney.

Although Leon's knew about the February 24, 2003, trial date, Clements testified at Leon's motion for new trial that Rogers falsely told him that the trial court had cancelled the February 24 date and would reschedule the trial. It is unrealistic to expect a client to verify its counsel's statement that a trial date had been cancelled. Rogers's false statement misled Leon's.[3] Leon's has satisfied the first prong of *Craddock* as to the February 24 date. *See Lowe v. Lowe,* 971 S.W.2d 720, 724 (Tex. App.-Houston [14th Dist.] 1998, pet'n den'd). Leon's did not know about the rescheduled date of February 27; hence, Leon's did not act with "conscious indifference" in failing to appear on February 27. Any notice to Rogers of the February 27 date cannot be imputed to his former client, Leon's. *Langdale v. Villamil,* 813 S.W.2d 187, 190 (Tex.App.-Houston [14th Dist.] 1991, no writ). And there was no notice to Rogers of the new February 27 date until after his disbarment date of February 21.

Citing *Plains Growers, Inc. v. Jordan,* 519 S.W.2d 633, 636 (Tex.1974)(original proceeding), Merit argues that Leon's had notice of the February 24 scheduled setting and that Leon's was required to keep itself informed of the time that the scheduled case might be heard during the following week. This ignores Rogers's false statement to Leon's. Also, Merit's reliance on *Plains Growers* is misplaced.

The supreme court in *Plains Growers* held that the default judgment in that case was not void and denied the request for a writ of mandamus to set the judgment aside. But the supreme court indicated that the trial judge had abused his discretion in entering the default judgment with no notice to either the attorney or the client:

---

**3.** Merit's attorney acknowledged that Rogers had lied to him more than once.

Although the setting and trial without notice may have constituted an abuse of discretion under the circumstances, a question we do not attempt to decide here, this does not render the judgment void. The trial court had jurisdiction of the subject matter and the judgment is not void *even though it may have been erroneous.* (Emphasis added)

*Plains Growers v. Jordan, supra* at 636. The motion for new trial in *Plains Growers* was filed late; therefore, the relator filed a mandamus action to set aside the default judgment as void. Leon's timely filed its motion for new trial and this appeal. We hold that the trial court below abused its discretion in entering the default judgment against Leon's.

 A party who has made an appearance in a cause is entitled to notice of a trial setting as a matter of due process under the Fourteenth Amendment of the Federal Constitution. *LBL Oil Company v. International Power Services, Inc.,* 777 S.W.2d 390, 390–91 (Tex.1989); *Lopez v. Lopez, supra.* Because Leon's had no notice of the post-answer default-judgment proceeding, actual or constructive, Leon's was deprived of due process. *Lopez v. Lopez, supra.* A party who has been denied due process through lack of notice of a trial setting satisfies the first requirement of *Craddock* and does not have to meet the remaining requirements of *Craddock* to be entitled to a new trial. *Lopez v. Lopez, supra; Smith v. Holmes,* 53 S.W.3d 815, 817 (Tex.App.-Austin 2001, no pet'n); *Green v. McAdams,* 857 S.W.2d 816, 819 (Tex.App.-Houston [1st Dist.] 1993, no writ). Leon's is entitled to have the default judgment set aside and to have a new trial. *LBL Oil Company v. International Power Services, Inc., supra* at 390–91; *Lopez v. Lopez, supra.*

Leon's first issue is sustained. The trial court erred in refusing to grant Leon's motion for new trial.

Because of our disposition of issues one and two, we need not address issues three, four, five, six, seven, and eight. TEX. R.APP.P. 47.1.

### *This Court's Ruling*

We reverse the trial court's judgment, including its partial summary judgment on August 21, 2002, and sanctions order on February 7, 2003, and remand for a new trial in accordance with this opinion.