

# NUMBER 13-13-00257-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VIVIANA SOSA, INDIVIDUALLY
AND AS REPRESENTATIVE OF
THE ESTATE OF DESTINY SOSA,
A DECEASED CHILD, AND
JESSE SOSA,                                                    Appellants,

v.

UNION PACIFIC RAILROAD COMPANY
AND ERNESTO ORTEGON,                                          Appellees.

On appeal from the 197th District Court
of Willacy County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Perkes**

Appellants Viviana and Jesse Sosa ("Sosas") filed a wrongful death action against

appellees Union Pacific and Ernesto Ortegon.   By one issue, appellants argue the trial

court erred in granting "death penalty" sanctions against them because: (1) there is no evidence that the Sosas were involved in, acquiesced to, condoned, ratified, or had knowledge of any sanctionable conduct; and (2) the Sosas did not have notice of the sanctions proceeding. We reverse and remand.

## I. BACKGROUND

On January 23, 2007, a Union Pacific train collided with a pickup truck carrying Viviana Sosa and her unborn child. Immediately following the collision, Viviana Sosa was taken to a hospital where doctors performed a cesarean section, in an effort to save the baby's life. Viviana Sosa gave birth to a baby girl, Destiny Sosa, who died two days later. The Sosas filed suit against Union Pacific and its engineer who operated the train, Ernesto Ortegon.[1] The Sosas brought personal injury claims for Viviana's injuries and wrongful death claims on behalf of their daughter. Their Original Petition included the following statement:

> This is the same Union Pacific attitude that recently resulted in an incident in neighboring Kennedy [sic] County involving a Union Pacific train that ran over and completely severed the legs of a young pregnant woman, after which the engineer of the offending Union Pacific train admitted to the investigating peace officer that "Union Pacific does not care if its trains run over wetbacks."

Matias Sosa ("Matias"), the driver of the pickup truck, thereafter intervened, represented by separate counsel.

During the course of litigation, the train's conductor, Frank De La Rosa, received two telephone calls from someone named John Weir. Weir claimed that he worked for

---

[1] Appellants were represented by attorneys Marc Rosenthal and J. Lynn Watson of Rosenthal & Watson, P.C.

2

Union Pacific's legal team. He told De La Rosa that the train's horn did not sound prior to the collision, and asked if De La Rosa wanted to change his previous statement about the horn's sounding.[2] De La Rosa recorded his second phone conversation with Weir and informed Union Pacific. Presented with the information about the mysterious phone calls, appellees began investigating the source of the telephone call. The call was traced to David Seibert, a longtime friend of one of the Sosas' attorneys. Appellees obtained Seibert's phone records, which revealed that immediately before and after he made the "John Weir" phone calls to De La Rosa, Seibert had called Marc Rosenthal.

Sosa's attorneys subsequently filed three motions to quash Siebert's deposition, a motion contending the trial court lacked jurisdiction to make rulings regarding the deposition, a motion for sanctions against appellees, a petition for a writ of mandamus in this Court, and a motion to reconsider the mandamus petition. Eventually, appellees deposed Siebert who admitted that he called De La Rosa but denied that he was directed to place the call.

The Sosas non-suited their first lawsuit on July 21, 2008, and refiled it seven months later. The new lawsuit was identical to the previous suit and the attorneys for both sides signed a Rule 11 agreement in which they agreed to use the discovery from the first case in the second case.[3] As discovery progressed in the second case, another conflict arose, this time regarding the train's event recorder. During a hearing pertaining

---

[2] Contrary to his representations, Weir was not an attorney for Union Pacific.

[3] Rosenthal was less involved in the second case, and the Sosas were represented in court by Mark Alvarado, on behalf of Rosenthal & Watson, P.C. Alvarado was the sole attorney appearing for the Sosas at the sanctions hearing.

to the recorder, the trial court ordered the parties to file a joint order on matters they could agree on, and request another hearing on matters they could not. Instead, the Sosas' attorneys submitted a proposed order without consulting with or providing a copy of the proposed order to appellees or their attorneys. The trial court signed the order which required appellees to produce discovery they had never agreed to produce, and that the trial court had never ordered appellees to produce. After the Sosas refused to withdraw the order upon request, the trial court held another hearing on a motion to reconsider. The trial court subsequently withdrew the discovery order.

Appellees filed a joint motion for sanctions. The amended motion asserted that the Sosas and Rosenthal should be sanctioned under Texas Rules of Civil Procedure 215.2 and 215.3 for multiple discovery abuses. Appellees also sought sanctions against the Sosas and Rosenthal under Texas Rule of Civil Procedure 13 for including in the Sosas' pleadings the inflammatory statement that "Union Pacific does not care if its trains run over wetbacks," which appellees alleged was false and procured by bribery.

During the sanctions hearing, appellees presented evidence connecting Rosenthal to Seibert's phone calls. They also presented testimony from the peace officer who investigated a 2005 train collision in which Rosenthal represented the plaintiffs. The former officer testified that his statement about "wetbacks"—which had appeared in both of the Sosa's petitions—was false and was the result of a $4,000 bribe from an agent of the Rosenthal & Watson firm. The trial court found that Sosa's pleadings violated Rule 13 of the Texas Rules of Civil Procedure and entered the following findings of fact:

. . . .

4

7. The Original Petition in Sosa 1, signed by Rosenthal, contains the following paragraph thirteen language, which is alleged to exemplify a Union Pacific corporate "attitude" of indifference in regard to the danger which the speed of Union Pacific's trains allegedly posed to the citizens of Raymondville, Texas:

> "This is the same Union Pacific attitude that recently in an incident in neighboring Kennedy (sic) County involving a Union Pacific train that ran over and completely severed the legs on a young pregnant woman, after which the engineer of the offending Union Pacific train admitted to the investigating peace officer that 'Union Pacific does not care if its trains run over wetbacks'" (emphasis supplied).

8. The above-quoted statements are false.

9. The above-quoted statements were taken from another case where Rosenthal was counsel of record for the Plaintiffs and are perjured statements.

10. Rosenthal and others at the law firm of Rosenthal and Watson suborned the perjury referred to above.

11. The above-quoted statements are groundless.

12. The above-quoted statements were made in bad faith.

13. The above quoted false statements were designed by attorney Marc Rosenthal to imbue the Plaintiffs' pleadings with a coercive character which they would not otherwise have by falsely, fraudulently and in bad faith attributing to Union Pacific and its employees a high degree of mental culpability, characterized by malicious or conscious indifference towards Hispanics which the statements falsely, fraudulently and in bad faith attribute to Union Pacific and its employees.

. . . .

Additionally, the trial court made the following findings of fact in support of discovery sanctions under Texas Rules of Civil Procedure 215.2 and 215.3:

. . . .

5

26. In the phone conversation Seibert repeatedly lied about who he was, who had asked him to contact De La Rosa, and even stated that he had been requested by Union Pacific's counsel to contact De La Rosa. Seibert, on behalf of Rosenthal, made fraudulent statements and false statements of material facts to De La Rosa, including, but not limited to the following:

> Seibert falsely claimed he was an individual named "John Weir";
>
> Seibert falsely claimed he worked for the Union Pacific;
>
> Seibert falsely claimed he had just spoken with "Tony Rodriguez", Union Pacific's counsel;
>
> Seibert falsely claimed that "Tony Rodriguez" requested that he call De La Rosa;
>
> Seibert falsely claimed that he was investigating the automobile/train collision and whether or not the train's whistle had been properly sounded.

. . . .

In regards to the Sosas, the trial court found the following:

. . . .

84. The Plaintiffs have for an extended period of time also been represented by at least one other member or affiliate of the law firm of Rosenthal and Watson, who has, since the dates of their filing, been aware of the sanctions motions and supporting evidentiary exhibits filed in Sosa 2 as well as of the reported decisions affirming the prior leveling of sanctions against attorney Marc Rosenthal.

85. Such other member or affiliate of the law firm of Rosenthal and Watson is presumed to have communicated to the Plaintiffs the egregious and repeated nature of such formerly-imposed and affirmed sanctions and to have as well communicated the serious nature of the sanction allegations with supporting exhibits which have been leveled in the case at bar.

86. Despite having been presumptively informed of the serious nature of the sanction allegations with supporting exhibits, which have been leveled in the case at bar, the Plaintiffs have not, through such additional

6

counsel or by any others means, sought to disavow any of the allegedly-sanctionable conduct which is alleged to have been undertaken on their behalf in the event and to the extent that any such conduct may be proven to have occurred.

. . . .

As to Rosenthal's conduct, the trial court concluded:

. . . .

13. Because Attorney Marc Rosenthal's discovery abuses and violations of Texas Disciplinary Rules of Professional Conduct Nos. 3.03(a) (2), 4.01, 4.02(a), 4.04, and 8.04, as set forth in Conclusions of Law Nos. 8-U, supra, were for the purpose of improperly eliciting information or manufacturing evidence going to the heart of Plaintiffs' Cause No. 2009-CV-0010-A claim that Union Pacific engineer Ernesto Ortegon failed to sound the Union Pacific train's whistle at the time of the accident forming the basis of such claim, same were subject to the parties' Tex. R. Civ. P. 11 agreement that the seeking or obtaining of discovery in Cause No. 2007-CV-0058-A for use in support of the Plaintiffs' Cause No. 2009-CV-0010-A claims would remain subject to all limitations and restrictions imposed by law, and therefore be subject to the enforcement in Cause No. 2009-CV-0010-A of all legal restrictions and Tex. R .Civ. P. 215.3 and 215.2 (b) enforcement remedies which the defendants could have asserted in Cause No. 2007-CV-0058-A.

14. The Original allegations signed and filed by Attorney Marc Rosenthal in Cause No. 2009-CV-0010-A that Union Pacific had a corporate "attitude" of indifference in regard to the danger which the speed of its trains allegedly posed to the citizens of Raymondville, Texas, as exemplified by an alleged "admission" of a Union Pacific engineer that "Union Pacific does not care if its trains run over wetbacks" were and are groundless, false, brought for the purpose of harassment, have no basis in fact or law, are not warranted by any good faith argument for the extension, modification or reversal of existing law, are extremely offensive in character, and, having been based upon perjured affidavit and deposition testimony which had been suborned via bribe or purchase by Marc Rosenthal and others at the law firm of Rosenthal and Watson, constitute extremely-egregious violations of Tex. R. Civ. P. 13 for which good cause exists for toe imposition of sanctions pursuant to Tex. R. Civ. P. 215.2 (b).

. . . .

7

16. The April 25, 2011 conduct of attorney Marc Rosenthal in failing to deliver to opposing counsel a copy of the proposed discovery Order containing relief which had not been addressed or granted by the Court constituted a violation of Texas Disciplinary Rule of Professional Conduct No. 3.05 (b) (2) and an abuse of the discovery process within the meaning of Tex. R. Civ. P. 215.3 and 215.2(b).

17. The April 25, 2011 action of attorney Marc Rosenthal in leading the Court to believe that a proposed Order containing relief which had not been addressed or granted by the Court had been agreed to by all counsel constituted an abuse of the judicial process as well as an abuse of the discovery process within the meaning of Tex. R. Civ. P. 215.3 and 215.2(b).

Regarding the Sosas conduct, the trial court concluded:

. . . .

26. In light of the multi-year period of time that attorney Marc Rosenthal has represented the Plaintiffs, the fact that such representation has occurred over the course of all of the proceedings which have taken place in Cause Nos. 2007-CV-0058-A and 2009-CV-0010-A, and as well over the course of all the proceeding which have taken place in Cause No. 2009-CV-0010-A alone, the fact that such representation by Marc Rosenthal and the firm of Rosenthal and Watson, P.C. has continued to this day, the fact that during such extended course of representation, Original and Amended sanctions motions, with evidentiary exhibits, have been filed which should have put such represented persons on notice to make inquiries concerning the legitimacy of such assertions and the truth of the evidentiary exhibits attached thereto, the fact that such Plaintiffs have for an extended period of time also been represented by at least one other member or affiliate of the law firm of Rosenthal and Watson who has at all times material been aware of the sanctions motions and supporting evidentiary exhibits filed in the instant case as well as of the reported decisions affirming the prior leveling of sanctions against attorney Marc Rosenthal for similarly-abusive conduct, the fact that such attorney is presumed to have communicated to such Plaintiffs the egregious and repeated nature of such formerly imposed and affirmed sanctions and the serious nature of the sanction allegations with supporting exhibits which have been leveled in the case at bar, and the fact that such Plaintiffs have not, through such counsel or by any other means, sought to disavow any of the allegedly-sanctionable conduct which was and is

8

alleged to have been undertaken on their behalf in the event and to the extent that any such conduct may be proven to have occurred, the sanctionable conduct which the Court has herein found to have been committed by attorney Marc Rosenthal as agent for and on behalf of such Plaintiffs can and should be imputed to such Plaintiffs as the principals of Marc Rosenthal.

27. In light of the facts set out in Conclusion of Law No. 26, the Plaintiffs must also be deemed in law, as principals of Attorney Marc Rosenthal, to have ratified the conduct of their counsel and agent, Marc Rosenthal, which the Court has found to be sanctionable.

Pursuant to sanctions available under rules 13, 215.2, and 215.3 of the Texas Rules of Civil Procedure, the trial court struck the Sosa's pleadings and dismissed their case with prejudice. Additionally, the trial court ordered Rosenthal to pay $125,000 in attorney's fees to appellees. The intervenor subsequently nonsuited his plea in intervention.

The Sosas filed a motion for a new trial which was overruled by operation of law. The Sosas appealed.

## II. DISCUSSION

### A. Standard of Review

We review the imposition of sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). A sanctions award will not withstand appellate scrutiny if the trial court acted without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). But we will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

9

A sanction must comply with due process: it must be just and not excessive. *Nath*, 446 S.W.3d at 361; *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). "A just sanction must be directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party, and the sanction must be visited upon the true offender." *Nath*, 446 S.W.3d at 363 (citing *TransAmerican*, 811 S.W.2d at 917). A sanctions award that fails to comply with due process constitutes an abuse of discretion because a trial court has no discretion in determining what the law is or applying the law to the facts. *See TransAmerican,* 811 S.W.2d at 917; *Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996).

In reviewing sanctions orders, we are not bound by a trial court's findings of fact and conclusions of law. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). Rather, we must independently review the entire record to determine whether the trial court abused its discretion. *Id.* However, when a sanctions order names a specific rule, we are confined to determining whether the sanctions are proper under that rule alone. *See id.* (citing *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied)).

**B. Applicable Law**

Rule 13 states that pleadings that violate the rule are sanctionable:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the

10

purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction . . . upon the person who signed it, a represented party, or both.

TEX. R. CIV. P. 13. In determining whether a claim is groundless, a court looks to the facts available to the litigant and counsel as well as the circumstances at the time the pleading was filed. *See Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Rule 13, however, does not permit sanctions on the issue of groundlessness alone. *Nath*, 446 S.W.3d at 363; *see* TEX. R. CIV. P. 13. Rather, the filing in question must be groundless and either brought in bad faith, brought for the purpose of harassment, or false when made. *Id.*

Discovery sanctions are authorized by Texas Rule of Civil Procedure 215. *See* TEX. R. CIV. P. 215. If a party fails to comply with an order compelling discovery or abuses the discovery process, a trial court is authorized to strike the party's pleadings or render a judgment by default after notice and a hearing. *See id.* 215.2(b)(5), 215.3. Any sanction that adjudicates a claim and precludes the presentation of the merits of the case constitutes a "death penalty" sanction. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 845 (Tex. 1992) (orig. proceeding); *TransAmerican,* 811 S.W.2d at 918. Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.,* 95 S.W.3d 656, 660 (Tex. App.—Dallas 2002, no pet.).

11

Although the choice is left to the sound discretion of the trial judge, the sanctions imposed must be just. *See* Tex. R. Civ. P. 215.2; *Cire*, 134 S.W.3d at 839; *Response Time*, 95 S.W.3d at 660. In order for a sanction to be just: (1) it must have a direct relationship with the offensive conduct, i.e., it must be directed toward remedying the prejudice to the innocent party; and (2) it must not be excessive; i.e., the trial court must consider the availability of less stringent sanctions and whether those lesser sanctions would promote full compliance. *See Cire*, 134 S.W.3d at 839; *TransAmerican*, 811 S.W.2d at 917; *Response Time*, 95 S.W.3d at 660.

Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that the party's claims or defenses lack merit. *TransAmerican*, 811 S.W.2d at 918. In exceptional situations, a court may impose determinative sanctions in the first instance when they are clearly justified and no lesser sanctions will promote compliance. *GTE Communications v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993).

### III. ANALYSIS

**A. Pleadings Sanctions**

The Sosas argue that the trial court incorrectly sanctioned them by dismissing their case with prejudice, when Rosenthal was the sole transgressor. The Sosas allege that they had no knowledge of the perjured allegation found in the pleadings or the discovery abuses.

Since the filing of the briefs in this case, the Texas Supreme Court has issued an instructive opinion dealing with pleading based sanctions. In *Nath v. Texas Children's*

12

*Hospital*, the supreme court upheld case-determinative sanctions based on rule 13 violations, concluding that there was a direct nexus between the *party's* offensive conduct and the pleadings filed. *See Nath*, 446 S.W.3d at 364 (emphasis added). *Nath* involved acrimonious litigation between a surgeon and his employer. Nath, the plaintiff, filed numerous amended petitions alleging that another surgeon, Shenaq—who was no longer a party to the lawsuit—operated on patients despite impaired vision and while afflicted with hepatitis. *Id.* at 366. Ostensibly, Nath's purpose behind the amended pleadings was to gather information regarding Shenaq's health in order to leverage a favorable settlement. *Id.* The court noted evidence of Nath's direct involvement in the lawsuit as follows: 1) Nath's admission that he sought medical information about Shenaq so that he could inform former patients of Shenaq's health problems; 2) Nath personally attended depositions; and 3) Nath claimed his relationship with Shenaq soured after Nath confronted Shenaq about his alleged health problems. *Id.* The court also held that Nath should be sanctioned for a pleading filed by his attorney even though the attorney swore in an affidavit that "he exercised his own legal judgment" when deciding what claims to file. *Id.* Despite the attorney's admission, the court noted that the petition contained information about Shenaq's health from the prior petitions, and reasonably concluded that the information came directly from Nath. *Id.* at 366-67.

Here, the Sosas' conduct is distinguishable from Nath's conduct. That the pleadings contained a perjured statement was only revealed during the sanctions hearing. There is no evidence in the record to show that the Sosas knew of the perjured statement at any time before the sanctions hearing. While the perjured statement characterizing

13

Union Pacific's corporate mindset regarding train accidents may have been incorrect, irrelevant, and warranted sanctions as to Rosenthal, it does not reflect any knowledge that the Sosas had at the time the pleadings were filed. Instead, the offending portion of the pleadings was revealed as false long after the pleadings were filed. We find it highly unlikely that Rosenthal explained to the Sosas that the pleadings would contain information that was false and obtained through bribery and perjury; and even more unlikely that the Sosas would have acquiesced to such conduct. Unlike *Nath*, there is no evidence in the record that the Sosas acknowledged or condoned the use of perjured facts in their petitions. Examining the facts and evidence available to the Sosas and the circumstances that existed at the time they filed their first and second lawsuits, we overrule the trial court's decision to sanction the Sosas personally for actions solely attributable to their attorney. *Id.* at 367.

## B. Discovery Sanctions

With respect to the discovery abuse sanctions, the Sosas again argue that the trial court's sanctions unfairly punish them for Rosenthal's violations of the disciplinary rules and Alvarado's discovery abuses. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02(a), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (West, Westlaw through 2013 3d C.S.) (Tex. State Bar R. art. X, § 9) (lawyer shall not communicate with represented party without permission of other lawyer).

In response, appellees argue that the sanctions imposed on the Sosas are proper because by signing the writ of mandamus petition, Viviana Sosa was aware of Siebert's improper contacts with De La Rosa. Appellees also contend that we can reasonably

14

presume that the Sosas communicated with their attorneys during the six year pendency of this case and despite knowing of the egregious conduct, the Sosas continued their attorney-client relationship. Appellees assert that the egregious conduct carried out solely by an attorney can result in the dismissal of a party's case. *See TransAmerican*, 811 S.W.2d at 918 (explaining that case-determinative sanctions can be assessed based on "a party's flagrant bad faith or counsel's callous disregard for the responsibilities under the rules). However, as noted by the Texas Supreme Court, "a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *TransAmerica*, 811 S.W.2d at 917.

In support of their argument, appellees urge that this case is factually similar to *Kugle v. DaimlerChrysler Corporation*, where the plaintiff's attorneys engaged in evidence tampering and perjury relating to an allegedly defective steering column, then attempted to hide their wrongdoing with false testimony and procedural chicanery. *Kugle v. DaimlerChrysler Corporation,* 88 S.W.3d 355, 366 (Tex. App.—San Antonio 2002, pet. denied). In that case, the trial court entered case-determinative sanctions against the plaintiffs and monetary sanctions against the plaintiff's attorneys. *Id.* at 361. In upholding the sanctions, the appellate court held that the trial court did not abuse its discretion in concluding that the "plaintiffs themselves were aware of and participated in the wrongdoing given their presence at the inspection of the steering column, [plaintiff's] false testimony, and the taking of a non-suit with prejudice in an obvious attempt to avoid exposure of the wrongdoing." *Id.* at 366.

In further support of their argument, appellees cite *Van Es v. Frazier*, 230 S.W.3d 770, 782 (Tex. App.—Waco 2007, pet. denied). In *Van Es*, our sister court concluded that the record supported a finding of the party's culpability in failing to comply with the trial court's discovery orders relating to requests for production and depositions. *Id.* The court further concluded that the length of time involved in the discovery dispute weighed heavily against the argument that the party was unaware of the discovery orders and his subsequent duty to comply. *Id.* However, in supporting this conclusion, the court noted that the sanctioned party received several intermediate sanctions prior to the death penalty sanctions. *Id.*

The present case is distinguishable from *Kugle* and *Van Es.* In *Kugle*, the party was aware of the discovery abuses given her presence at the inspection of the allegedly defective steering column. *See Kugle*, 88 S.W.3d at 366. After learning that the steering column was intact, the plaintiffs continued to pursue their lawsuit and presented post-suit testimony significantly different from pre-suit statements. *Id.* In *Van Es*, the *party* failed to respond to requests for production and appear for a deposition. *See Van Es*, 230 S.W.3d at 781 (emphasis added). Importantly, the record indicated that the party was personally aware of the ongoing discovery dispute and of his responsibility pursuant to the trial court's orders and previous intermediate sanctions. *See id.* at 782.

In *Spohn Hospital v. Mayer*, the Texas Supreme Court reversed a sanction award against Spohn where the record contained no evidence that the sanctions were visited on the offender. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882–83 (Tex. 2003). What the record in *Spohn* established was that the defendant, Spohn, deliberately withheld key

16

witness statements until thirty-one days before trial. *Id.* at 881. The trial court granted the plaintiffs' motion for sanctions and ordered that facts in the witnesses' written statements be taken as established, pursuant to rule 215.2(b)(3). *Id.*; *see* TEX. R. CIV. P. 215.2(b)(3). In reversing the sanctions award, the supreme court explained that while the sanctions were generally directed against the alleged abuse, neither the trial court nor the court of appeals discussed whether counsel or the clients were responsible for the discovery abuse. *Id.* at 883.

Here, the only evidence in the record that the Sosas were somehow involved in the misconduct is the implication that they knew of their attorney's actions based on the length of the attorney-client relationship. The record contains no deposition testimony from the Sosas, and they did not testify at any of the trial court's hearings. Although this case was litigated for nearly 6 years, the length of representation alone is not enough to create an inference that the Sosas were involved in Rosenthal and Alvarado's discovery abuses. *See Van Es*, 230 S.W.3d at 781. Additionally, Viviana's signature on the mandamus petition does not impute knowledge of any misconduct to her. The mandamus petition discusses the De La Rosa/Siebert phone call, but it characterizes the deception as coming from De La Rosa. Furthermore, the mandamus petition does not reveal the relationship between Siebert and Rosenthal. Without the benefit of context in the overall deceptive scheme, the mandamus gives little insight into the illicit phone conversations. Additionally, the trial court issued no orders or lesser intermediate sanctions that would have given the Sosas any indication of their counsel's misdeeds.

17

*See id.* The only sanctions in this case came after the trial court became aware of the full breadth of counsel's misconduct; sanctions which effectively ended the litigation.

Appellees argue that the exceptional misconduct warrants dismissal of the Sosas' case. Rosenthal's conduct, which based on the trial court's findings was egregious and unethical, does not create a presumption that the Sosas' claims lack merit. *See TransAmerican*, 811 S.W.2d at 918 (holding that where there is an extreme abuse of the judicial process, "the court may presume that an asserted claim or defense lacks merit and dispose of it."). Rosenthal's discovery abuse attempted to bolster his evidence that the train did not sound its horn prior to entering the crossing. The Sosas already had testimony from several witnesses questioning whether the horn was sounded, but certainly testimony from De La Rosa, who was on the train, that the horn was not sounded would have foreclosed any argument to the contrary. Even though Rosenthal's efforts did not yield favorable results, it does not diminish the veracity of the witnesses previously deposed on the horn issue. Therefore, we disagree with appellees that Rosenthal's conduct necessarily should result in a dismissal of the Sosas' claims. *See Lanfear v. Blackmon,* 827 S.W.2d 87, 91 (Tex. App.—Corpus Christi 1992, orig. proceeding) (holding that despite flagrant bad faith in discovery abuses, trial court failed to determine whether lawyer or client was at fault).

We recognize that an attorney-client relationship does not completely shield a client from the attorney's misdeeds, but we are also mindful that an unsophisticated party in the hands of a manipulative and unethical attorney can be powerless. Here, the record does not indicate that the Sosas actually were or should have been aware of their

counsel's conduct nor does that conduct create a presumption that the claims are without merit.   *See Chrysler Corp.,* 841 S.W.2d at 851; *Leon's Fine Foods of Tex., Inc. v. Merit Inv. Partners L.P.*, 160 S.W.3d 148, 153 (Tex. App.—Eastland 2005, no pet.).   The trial court abused its discretion in imposing case-determinative sanctions on the Sosas.   *See TransAmerica*, 811 S.W.2d at 918.

## IV.   CONCLUSION

We reverse the trial court's order granting sanctions against the Sosas remand this case to the trial court for further proceedings consistent with this opinion.[4]


GREGORY T. PERKES
Justice

Delivered and filed the
14th day of May, 2015.

---

[4] Because the Sosas' first issue is dispositive, we need not address their other issues.